UNITED STATES of America
v.
Herman A. SMOOT, Appellant.
No. 71–1058.

United States Court of Appeals,
District of Columbia Circuit.
April 25, 1972.

Mr. Glenn A. Mitchell, Washington, D. C. (appointed by this court), was on the brief for appellant.

Messrs. Thomas A. Flannery, U. S. Atty. at the time the brief was filed, and John A. Terry and John A. McCahill, Asst. U. S. Attys., were on the brief for appellee.

Before McGOWAN, LEVENTHAL and MacKINNON, Circuit Judges.

PER CURIAM:

Appellant was charged with second degree murder and convicted of manslaughter arising out of a stabbing death. His appeal contends that the verdict was coerced by the *Allen* charge and by the interrogation of the jury which occurred prior to their release to go home one evening after they reported they were deadlocked. The appeal also contends that cross examination of a Government witness was improperly restricted. We find the trial to have been fairly conducted and affirm.

I

■ The point involving the *Allen* charge is answered by the fact that our recent decision with respect to the *Allen* charge restricted its application to cases tried after the date of the opinion. United States v. Thomas, 146 U.S.App. D.C. 101, 449 F.2d 1177 (en banc, 1971). See also United States v. Wilson, 145 U. S.App.D.C. 343, 449 F.2d 1005 (en banc, 1971). In addition, the charge that was given here was not the full *Allen* charge. The court did not make any reference to the proportion of jurors for or against. So, while the instruction given does not receive our approval for future cases in lieu of the instruction outlined in United States v. Thomas, *supra,* we merely note that in this case it was not prejudicially coercive.

II

■ As to the court's ruling limiting defense counsel's cross examination of a Government witness on the ground that he was embarking on a fishing expedi-

tion to attempt to find bias, we find that it was well within the court's discretion to rule as it did. The witness testified that appellant was in the decedent's house at the time of the killing and that it was the custom for the houseman to give the cutman a share of the crap game (Tr. 66–68; 79–80). Appellant admitted that he was in the house at the time of the killing (Tr. 308–315) and his testimony with respect to the crap game custom was to the same effect as that of the witness (Tr. 330). We thus see no prejudice in restricting cross examination of a witness whose testimony essentially conformed to the testimony of the accused.

III

The remaining point concerns an allegation that a colloquy between the judge and the jury foreman was coercive upon the jury. The following occurred in the courtroom after the jury had returned voluntarily from their deliberations:

[Defense Counsel]: I would like to request a mistrial at this time. The jury indicated they are deadlocked.

THE COURT: I have some questions I am going to put to them.

(In open Court.)

THE COURT: Mr. Foreman, I know you all have worked long and patiently on this matter. The Court would like to inquire whether there seems to be any likelihood that the jury could agree as to the lesser included offense. I don't know what you have been considering—whether it is the indictment or lesser included offense. Could you agree on anything, do you think, if you deliberated a little longer?

THE FOREMAN: No, sir. I don't think so.

THE COURT: You question whether you could?

THE FOREMAN: Yes, sir.

THE COURT: Tomorrow is your last day. I certainly wouldn't keep you beyond tomorrow. But, I would like to dispose of this case, if you can,

recognizing the principles I previously gave you. What is your candid view.

THE FOREMAN: I beg your pardon.

THE COURT: What is your candid view? What do you really thing [*sic*] about the matter?

THE FOREMAN: Well, we have some decision on the charge and the lesser charge. That is where the misunderstanding or rather the decision is between them.

THE COURT: Do you think that the jury could agree on the lesser charge or would you like to take that up tomorrow morning after you have a night's sleep and a little freshness, which none of you have right now. I know I feel tired after the day in Court. At this time of day I wouldn't ask you to go back now.

I think I will ask you to come back tomorrow and see if you can reach a verdict on the lesser charge even if you can't agree on the greater charge. At least, give it a little consideration.

Tr. 413–414.

■ The court was on treacherous grounds in inquiring "whether there seems to be any likelihood that the jury could agree as to the lesser included offense." Immediately thereafter, however, he saved himself considerably when he asked, "Could you agree on *anything*, do you think, if you deliberated a little longer?" (Emphasis added.) This inquiry as to whether they could *"agree on anything"* does not necessarily refer to agreeing on a guilty verdict. A verdict of acquittal is as much an agreement as one of conviction. Thereafter the fore-

man indicated that they had reached some decision "on the charge and the lesser charge" and that "the decision is *between them.*" (Emphasis added.) This made it apparent that the jury had *already* determined in their deliberations that the facts presented a question as to whether appellant was guilty of second degree murder or manslaughter.[1] Under such circumstances, where the foreman volunteered this information without direct inquiry by the court, the statement by the judge that he would ask them "to come back tomorrow to see if they could reach a verdict on the lesser charge even if you can't agree on the greater charge," was not coercive.

■■ When a jury reports that they are unable to agree the court is faced with the alternative of discharging them or directing them to continue their deliberations. One of the factors that the judge may consider in arriving at this decision is the possibility that the jury may be able to come to an agreement on any of the charges submitted to them for determination. In order to determine the likelihood of an agreement it is obviously necessary in most instances, and proper, for the judge to interrogate the jury.[2] Such inquiry requires the utmost care and circumspection and under no circumstances should the court ask for the numerical division within the jury[3] or in any way influence any particular result. Leading inquiries should be avoided. Instead of inquiring, "Is there some possibility of agreement on the lesser charge," a preferable inquiry would be "Without attempting to influence your deliberations in any way, I merely wish to inquire whether you have

---

1. Appellant had requested that the jury be instructed on their ability to return a verdict of manslaughter as a lesser included offense of second degree murder (Tr. 378).

2. 1 Devitt & Blackmar, Federal Jury Practice & Instructions § 5.11 (2d ed. 1970) ; 89 C.J.S. Trial § 482 (1955). While an inquiry as to "how many" jurors believe a verdict could be reached has been held to not be improper, Carlton v. United

States, 395 F.2d 10, 11 (9th Cir. 1968), cert. denied, 393 U.S. 1030, 89 S.Ct. 642, 21 L.Ed.2d 574 (1969), such inquiry is not recommended.

3. *Id*, Brasfield v. United States, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926) ; and in Mullin v. United States, 123 U.S. App.D.C. 29, 356 F.2d 368 (1966), we held it to be reversible error for the jury to disclose their numerical division on the charges.

explored the possibility of agreement on the lesser charge." It would also be proper, at that time, to instruct again on the jury's duty to determine the guilt or innocence of the accused as to any offense necessarily included in the crime charged.[4]

Affirmed.

4. An appropriate instruction is set out in 1 Devitt & Blackmar, *supra* note 2, § 17.11.