UNITED STATES of America, Appellee,

v.

Helenmary HOTZ, Defendant, Appellant.

No. 80–1005.

United States Court of Appeals,
First Circuit.

Argued April 8, 1980.

Decided May 2, 1980.

As Amended May 5, 1980.

Willie J. Davis, Boston, Mass., for defendant, appellant.

John W. Laymon, Asst. U. S. Atty., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, ALDRICH and BOWNES, Circuit Judges.

ALDRICH, Senior Circuit Judge.

Helenmary Hotz was indicted for unlawful possession of stolen mail (an unemployment check) under 18 U.S.C. § 1708. At the trial a government expert testified that the endorsement on the check was in defendant's handwriting. An expert called by defendant testified to having doubts on this score. The jury commenced deliberating at about two o'clock. At 6:15 the court discharged it because of failure to agree. Defendant noted her objection. Upon the government's announcement that it proposed to try her again, defendant moved to dismiss on the ground of double jeopardy. From the court's denial of the motion, defendant appeals.

According to the court's memorandum opinion, during the interval between two o'clock and 6:15 the following occurred:

"At 4:00 P.M. the court received a note from the Foreman, 'We are at a impasse—vote is 11–1 and the 1 juror I feel can't be swayed.' At 4:40 P.M. the court conferred with counsel and discussed the fact of the jury having revealed its division. The court also raised the question whether the jurors should be sent to their homes to return on the following day, Saturday, or be kept deliberating during the evening. While defense counsel was conferring with the defendant on this subject the court received, at 5:00 P.M., a second note, 'We are deadlocked at 11–1. I do not feel we can reach a unanimous decision.' Defense counsel then reported the defendant's preference that the jury continue its deliberations during the evening and not be sent home, whereupon the court directed the deputy marshal to advise the jurors that they should continue their deliberations but that the court would send out for sandwiches. The court then recessed.

"Shortly thereafter, the court was advised by the Marshal's office that there were unusual numbers of people eating downtown that evening and it would be impossible to make arrangements either to take the jury out to supper or to have sandwiches brought in, for a longer period of time then usual, and that there was no prospect of getting supper for the jurors until 7:30 or 8:00 P.M. Thereupon the court, at 6:15 P.M., brought the jurors into the courtroom and, without further consultation with counsel, asked the foreman if it was likely that the jury would reach a unanimous verdict in another thirty minutes or so. Upon receiving a negative response, the court declared a mistrial and discharged the jury."

■ The right not to be put twice to the bar is of a very high order. *Arizona v. Washington*, 1978, 434 U.S. 497, 503–505, 98 S.Ct. 824, 829–830, 54 L.Ed.2d 717; *United States v. Jorn*, 1971, 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543; *United States v. Pierce*, 1 Cir., 1979, 593 F.2d 415, 419. The government may avoid its effect only upon a showing of a "manifest necessity," or a "high degree" of necessity. *Arizona*, ante, 434 U.S. at 505–506, 98 S.Ct. at 830; *Wade v. Hunter*, 1949, 336 U.S. 684, 689–90, 69 S.Ct. 834, 837, 93 L.Ed. 974. A

prospective delay, even a long one, in obtaining supper is not of such consequence. It is no longer the case that "wretches hang that jurymen may dine." A. Pope, The Rape of the Lock, III, 1.21. The court could have sent the jury home to resume deliberations the following day even though that was a Saturday, if, because Monday was a holiday, it objected to waiting until Tuesday.

 If a jury fails to reach agreement after deliberating long enough to warrant a conclusion that agreement is not fairly possible, the court may declare a mistrial and avoid double jeopardy, but this is to be done with great reluctance. While a district court has broad discretion in determining if a mistrial is required by the jurors' reaching an impasse, *Arizona*, ante, 434 U.S. at 509, 98 S.Ct. at 832, we know of no case in which such a determination has been made after so short a time. In its memorandum opinion the court relied on its judgment that to require the jury to wait for supper, or to come back the next day, would put the single dissenting juror in an uncomfortable position and "seemed impermissibly coercive."

 This raises a number of questions. A court, of course, cannot put pressure on the jury, and it would have been ground for reversal for it to have inquired as to the division. *Brasfield v. United States*, 1926, 272 U.S. 448, 47 S.Ct. 201, 70 L.Ed. 407; *United States v. Smoot*, D.C.Cir., 1972, 463 F.2d 1221. However, the jury acted on its own motion in revealing the division, the court not having given what has been called the standard instruction not to report such information. *See* 2 Devitt & Blackmar, Federal Jury Practice and Instructions § 74.08, at 634. This, of course, imposed no pressure. We do not agree with the dictum in *Smoot*, 463 F.2d 1221, 1223 n. 3, seemingly approving a prior decision in that circuit, *Mullin v. United States*, 1966, 123 U.S.App. D.C. 29, 356 F.2d 368, as holding that for the jury to volunteer its division meant reversible error. The court said so many things in *Mullin* to justify the declaration of a mistrial that it is not clear what it decid-

ed. The opinion did not even reveal how long the jury had been out.

 We would not call such volunteering by a jury reversible error. *United States v. Zeehandelaar*, 2 Cir., 1974, 498 F.2d 352, 358. Rather, although we prefer the instruction forbidding it, we consider that if the jury does volunteer its division the court may rely and act on the information to some extent. *Cf. United States v. Vega*, 2 Cir., 1971, 447 F.2d 698, *cert. denied*, 404 U.S. 1038, 92 S.Ct. 712, 30 L.Ed.2d 730, a case we cite without indicating our view of the correctness of the particular procedure there adopted. However, we think the court over-emphasized the pressure that the other jurors might exert on the single dissenter. Peer pressure, after all, is basic to the jury process. The fact that the jury seemed deadlocked over a single issue after four hours did not mean that another shot at reaching agreement was manifestly doomed to failure. Both in acting without hearing counsel, and in the decision itself, the court downplayed a fundamental right of the defendant.

*Indictment dismissed.*