Daniel W. HENDERSON, Petitioner,

v.

William WRIGHT, Sheriff of Somerset County and James E. Tierney, Attorney General for the State of Maine, Respondents.

Civ. No. 82–0001–B.

United States District Court,
D. Maine.

March 16, 1982.

Richard Dostie, Belfast, Maine, for petitioner.

Charles Leadbetter, Asst. Atty. Gen., Augusta, Maine, for respondents.

## MEMORANDUM OF DECISION

CYR, District Judge.

### I

### FACTS

A writ of habeas corpus is requested on the ground that petitioner is in custody in the Somerset County Jail in violation of the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States. Upon consideration of the entire record,[1] the court determines that no evidentiary hearing is required, see Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. fol. § 2254, and makes the following findings of fact and conclusions of law.

Petitioner was convicted by the Somerset County Superior Court following a second trial on the charge of burning his own truck with intent to collect insurance proceeds. Petitioner contends that the declaration of a mistrial in the first trial, without his consent, barred a second trial. Petitioner is serving a seven-month sentence in Somerset County Jail for class B arson,[2] after having exhausted all available remedies in the courts of the State of Maine, see 28 U.S.C. § 2254(b) & (c), by taking a direct appeal to the Maine Supreme Judicial Court. The Law Court rejected the contention, now before this Court, that the judgment of conviction was obtained in violation of the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States. See State v. Henderson, 435 A.2d 1106 (Me.1981).

### The First Trial

The first trial lasted one day. The presentation of evidence was completed in approximately three hours. Jury deliberations began at 4:32 p. m. Approximately one hour later, the foreman of the jury notified the presiding justice in writing: "We cannot come to a decision. With (6) guilty, (4) innocent, (2) undecided." At 5:41 p. m. the presiding justice delivered additional jury instructions, employing the ABA

---

1. Respondents submitted the following materials with their answer: (1) transcript of the first jury trial, held December 6, 1978; (2) transcript of additional jury instruction given at 5:41 p. m. on December 6, 1978; (3) transcript of October 24, 1980 hearing on motion to dismiss; (4) transcript of second jury trial, held December 15–17, 1980; (5) Superior Court Clerk's Record [Rule 39(c), M.R.Crim.P.] in Law–81–44; (6) petitioner's brief and reply brief in Law–81–44; and (7) state's brief in Law–81–44.

2. 17–A M.R.S.A. § 802(1)(B)(1).

model.[3] The jury retired for further deliberations at 5:44 p. m. At approximately 7:00 p. m., after deliberating for about two and one-half hours in all, the jury was brought back into the courtroom upon receipt of written notification from the foreman that the jury was "deadlocked." The presiding justice thereupon inquired of the jury in the presence of all parties and their counsel:

THE COURT: Welcome back.

I have received a note from the Foreman to the affect that you are still deadlocked. Is this so? You have given it a try, you have gone back and you have tried to reconsider your positions in light of the positions of the others and you are still unable to reach unanimity?

I take it from this that there is no possibility of reaching a unanimous decision without compressing or violating standards; your positions are such that there is no way to resolve the differences. Is my understanding correct?

THE FOREMAN: Yes.

THE COURT: Very well, your failure to reach a decision compels me to declare that there is a manifest necessity that I declare a mistrial and I do declare a mistrial.

Further service by these jurors appears to have been planned for the following day,[4] a

Thursday. There is no indication in the trial record that counsel were consulted prior to the declaration of the mistrial. The record discloses neither an objection by defense counsel, nor an opportunity to object, to the declaration of a mistrial.

## II

## THE LAW

### A. *Double Jeopardy*

■■ Two fundamental policies compete for consideration under the double jeopardy clause. The "valued right [of the accused] to have his trial completed by a particular tribunal," *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949), is to be weighed alongside "the public interest in just judgments," *see Arizona v. Washington*, 434 U.S. 497, 510, 98 S.Ct. 824, 832, 54 L.Ed.2d 717 (1978). Where there is a final judgment of acquittal these principles are harmoniously served and "the Constitution conclusively presumes that a second trial would be unfair," *id.* at 503, 98 S.Ct. at 829. But where a trial aborts before final judgment, without the consent of the accused, these principles must be placed in appropriate balance in determining whether a second trial is constitutionally permissible. Reviewing courts must determine whether

**3.** THE COURT: The Court has received a message that you cannot come to a decision at this time, that some of you are voting guilty and some innocent and some undecided. As I told you before, the verdict that you reach must be unanimous, each of you must agree thereto, and you have a duty to consult with one another with a view to reaching an agreement, if that can be done without violence of your individual judgment. You must decide the case yourself, but only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations you should not hesitate to reexamine your own views and change your opinion if convinced it is erroneous, however, none of you should surrender your honest conviction to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of reaching a verdict.

Do you think if you were to retire again and spend some time together again that you might, without violence of your own conscience, resolve the differences among you? Do you want to give it another try for awhile? Why don't

you do that and we will send in menus for sandwich orders or something so that you can have—I don't mean that to give you the impression that you are going to stay here all night, but it is getting to the time that you would customarily be eating, so we want to make this infringement on your freedom to do what you customarily do as comfortable as possible. So the jury officer will escort you back to the jury room, take your orders for sandwiches and you will continue your deliberations, and, if possible, in discussing one with the other, make adjustments or understand or be persuaded before you make your adjustments that possibly one group of concepts is more credible than other groups or concepts or whatever it is for you to arrive at a unanimous decision. If you can arrive at a unanimous decision that would be wonderful; if you are not able to, that would absorbed and understood. Let's give it one more try, shall we?

**4.** *See* note 6 *infra*.

"the trial judge exercised 'sound discretion' in declaring a mistrial." *Id.* at 514, 98 S.Ct. at 835.

 The accused may again be tried if the state can demonstrate a "high degree" of necessity for the earlier mistrial. *Id.* at 506, 98 S.Ct. at 830–831. The "strictest scrutiny" is required in cases where the mistrial is granted at the request of the prosecutor "in order to buttress weaknesses in his evidence," *id.* at 507, 98 S.Ct. at 831. "At the other extreme is the mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict, long considered the classic basis for a proper mistrial." *Id.* at 509, 98 S.Ct. at 832. "Great deference" must be accorded the declaration of a mistrial in such circumstances, provided the decision was not taken for reasons "unrelated to the trial problem." *Id.* at 510, 98 S.Ct. at 832–833.

**B. Consent to Declaration of Mistrial**

 The consent of the accused ordinarily obviates the requirement of a showing of "manifest necessity" for the declaration of a mistrial. *Lee v. United States,* 432 U.S. 23, 31–34, 97 S.Ct. 2141, 2146–2147, 53 L.Ed.2d 80 (1977); *United States v. Dinitz,* 424 U.S. 600, 606–608, 96 S.Ct. 1075, 1079–1080, 47 L.Ed.2d 267 (1976). The present record indicates no objection by petitioner or his counsel to the declaration of a mistrial by the presiding justice, nor any prior consultation with counsel.[5] Neither petitioner nor his counsel appears to have been afforded an opportunity to object, except possibly in the presence of the jury after the declaration of the mistrial, which would have entailed the substantial risk that petitioner appear to the jury to be responsible

for compelling a continuation of their deliberations contrary to the views of both judge and jury. Where the trial judge declares a mistrial in the presence of the jury without first affording the accused adequate opportunity to object[6] the consent of the accused cannot fairly be inferred absent other circumstances indicating acquiescence. *Cf. United States v. Smith,* 621 F.2d 350 (9th Cir. 1980), *cert. denied,* 449 U.S. 1087, 101 S.Ct. 877, 66 L.Ed.2d 813 (1981) [failure to object to mistrial declared after discussion with trial judge concerning the mechanics of retrial, constitutes implied consent]; *United States v. Gordy,* 526 F.2d 631 at 635 n.1 (5th Cir. 1976) *(dictum)* [failure to object *may* constitute consent]; *United States v. Goldstein,* 479 F.2d 1061, 1067–68 (2d Cir. 1973), *cert. denied,* 414 U.S. 873, 94 S.Ct. 151, 38 L.Ed.2d 113 (1973) [failure to recant previously denied motion for mistrial or to raise objection to subsequent declaration of mistrial despite opportunity to do so, constitutes implied consent].

**C. Factors Necessitating Mistrial**

**1) Length of Deliberations**

 An important factor substantiating the declaration of a mistrial by reason of jury deadlock is the length of the deliberations, *see, e.g., United States v. Hotz,* 620 F.2d 5, 7 (1st Cir. 1980), considered in light of the length of the trial and the complexity of the issues, *see id.; Nelson v. District Court,* 543 F.2d 631 (8th Cir. 1976) *(per curiam); United States v. Larry,* 536 F.2d 1149 (6th Cir.), *cert. denied,* 429 U.S. 984, 97 S.Ct. 502, 50 L.Ed.2d 595 (1976); *United States v. Beckerman,* 516 F.2d 905 (2d Cir. 1975); *United States v. See,* 505 F.2d 845 (9th Cir. 1974). These jury deliberations

---

**5.** In other cases involving deadlocked juries, there has been no opportunity to object in advance of the declaration of the mistrial. *See, e.g., United States v. Hotz,* 620 F.2d 5, 6 (1st Cir. 1980); *United States v. Larry,* 536 F.2d 1149, 1151–52 (6th Cir.), *cert. denied,* 429 U.S. 984, 97 S.Ct. 502, 50 L.Ed.2d 595 (1976); *United States v. Beckerman,* 516 F.2d 905, 908 (2d Cir. 1975).

**6.** The trial transcript indicates no significant interval between the declaration of the mistrial

and the discharge of the jury, such as would have permitted reconsideration by the trial judge upon objection by the defendant.

> THE COURT: Very well, your failure to reach a decision compels me to declare that there is a manifest necessity that I declare a mistrial and I do declare a mistrial.
>
> Thank you, you are excused . . . until tomorrow morning. . . .

Transcript of Trial (December 6, 1978), at pp. 2–3 [transcript of mistrial declaration].

were relatively brief, but so was the trial. The presentation of evidence took only about three hours. Although rather simple, the factual issues in the case did not readily lend themselves to unanimous resolution by twelve jurors, due to the highly contradictory nature of important testimony which would appear to have been reconcilable only on the basis of a determination of the credibility of certain key witnesses.

### 2) *Division of Jury*

 The foreman volunteered the information to the court that the jury was divided; 6 for conviction, 4 for acquittal, and 2 undecided. The trial judge may rely on *volunteered* information as to the division of the jury in determining whether and how to proceed. *See United States v. Hotz*, 620 F.2d 5, 7 (1st Cir. 1980). *See also Holt v. Wyrick*, 649 F.2d 543 (8th Cir. 1981); *Mullin v. United States*, 356 F.2d 368, 370 (D.C.Cir.1966). The Court of Appeals for the First Circuit requires that all circumstances be considered in determining the extent of the risk of coercing an unprincipled verdict by compelling continued deliberations, the division among the jurors being one such circumstance. *See United States v. Hotz*, 620 F.2d at 7. The division was close enough in the present case to lessen somewhat the risk of coercion of the sizable minority holding out for acquittal, but also close enough to lend support to the view of the presiding justice that a unanimous verdict was not possible.

In *United States v. Hotz, supra*, the First Circuit held the declaration of a mistrial an abuse of discretion in the following circumstances:

1. The jury deliberated for four hours.

2. There had been two communications from the jurors that an "impasse" or "deadlock" existed.

3. No additional instructions were given to the jury, although the trial judge did at one point direct the jurors, through the deputy marshal, to continue their deliberations.

4. The jurors had volunteered a report of their division as 11–1, without specifying whether the hold-out was for conviction or acquittal.

5. Although the first "impasse" was discussed with counsel, the declaration of mistrial was not preceded by further consultation with counsel.

6. The trial court's concern about a delay in obtaining supper for the jurors was a significant factor in the declaration of a mistrial.

7. The trial court could have had the jury go home and return the following day, a Saturday, if the evening meal problem made further deliberations impracticable.

8. The final inquiry made of the jurors by the trial judge was whether it was likely that the jury would reach a unanimous verdict in another *"thirty minutes or so."* [7]

9. The jury was deadlocked on a single issue.

10. Although the division was 11–1, the trial judge "over-emphasized" the potential pressure on the hold-out juror.

The court of appeals seems to have held the view that the trial judge in *Hotz* had not done enough to ascertain that the jury was *in fact deadlocked.* Although the trial judge had received two notes indicating that the jury was at an impasse, he did not instruct the jurors further, nor did he inquire whether they were *hopelessly* deadlocked. Instead, he inquired whether the foreperson thought the jury could reach a unanimous verdict within the next "thirty minutes or so," which strongly suggests that the trial judge did not give the requisite attention to alternatives, *see Brady v. Samaha*, 667 F.2d 224 at 228–229 (1st Cir. 1981), such as keeping the jury later that evening or bringing them back the next day. Judge Aldrich seemed less concerned about risking undue coercion of the one hold-out juror; "peer pressure, after all, is basic to the jury process," 620 F.2d at 7.

7. (*Emphasis added.*)

■ Although the jury deliberated for a shorter period in the present case than in *Hotz*, the presiding justice did instruct and require the jury to make a second effort to reach a unanimous verdict. The presiding justice ascertained by direct inquiry of the foreman in the presence of the other jurors that it would not be *possible* for them to reach a unanimous verdict consistent with their individual responsibilities as jurors. The determination that the jury was in fact hopelessly deadlocked in the present case is supported by the record.

■ The 6–4–2 division disclosed here is significantly different from the division in *Hotz*. It is closer, indicating that unanimity was less likely. More jurors were for conviction than for acquittal. Because the minority favoring acquittal could have been exposed to increasing court-imposed pressure to relent, compelling further deliberations for the purpose of reaching a unanimous decision would have tended to run contrary to the interests of the accused. *See Holt v. Wyrick*, 649 F.2d 543, 551 (8th Cir. 1981). At some point the valued right of the accused to end his confrontation with society and to have his guilt or innocence determined by a particular tribunal must yield to the need to protect him (and the public interest) from a coerced, *ergo* unjust, verdict. That point was more nearly approached here than in *Hotz*.

The First Circuit has stressed the importance of judicial consultation with counsel and a careful consideration of alternatives prior to the declaration of a mistrial. *Brady v. Samaha*, 667 F.2d 224 (1st Cir. 1981) [conduct of defendant potentially prejudicial to co-defendant]; *United States v. Pierce*, 593 F.2d 415 (1st Cir. 1979) [juror violation of instructions not to communicate with outsiders]. There appears to have been no prior consultation with counsel in the present case. Yet the presiding justice did instruct and require the jury to deliberate further and did determine, after further jury deliberation, that there was no possibility of a unanimous verdict. Although it would seem sound practice to consult with counsel even in these circumstances, there was much less for the court in this case to consult with counsel about, since there was no realistic alternative to the declaration of a mistrial once it was determined that the jury was hopelessly deadlocked.

■ There is an adequate basis in the present record for the determination by the presiding justice that the jury was in fact hopelessly deadlocked. The United States Supreme Court has held in similar circumstances that the discretion of the trial judge is entitled to "great deference." *Arizona v. Washington*, 434 U.S. at 510, 98 S.Ct. at 832–833. Where the jury is hopelessly deadlocked there can be no doubt as to the manifest necessity for the declaration of a mistrial.

It is, therefore, ORDERED, that the petition for habeas corpus be DISMISSED and the writ DENIED.