Terrance A. **FORD**, Appellant

v.

**UNITED STATES**, Appellee.

No. 98–CF–119.

District of Columbia Court of Appeals.

Aug. 12, 2004.

Before TERRY and SCHWELB, Associate Judges, and BELSON, Senior Judge.

**ORDER**

Appellant's convictions of second-degree murder while armed and other related offenses were affirmed by this court in *Ford v. United States,* 759 A.2d 643 (D.C.2000). In our opinion we stated that the trial judge "announced his intention to tell the jurors that they could return a verdict on the lesser charge of manslaughter if, after reasonable efforts, they could not achieve a unanimous verdict on second-degree murder. There is no written instruction to this effect in the record, however, nor is there any transcript of such an instruction

given orally in court." *Id.* at 645–646. Appellant has filed a petition for rehearing,[1] pointing out that in fact the record does contain a handwritten instruction (apparently written by the trial judge), which we overlooked, and which reads in its entirety as follows:

> If you are unable to reach a verdict on the charge of second-degree murder while armed after making all reasonable efforts to to so [*sic*], you are permitted to return a verdict on the lesser charge of voluntary manslaughter, provided that your verdict on the voluntary manslaughter charge is unanimous.

Appellant also notes that in the transcript of Thursday, October 9, after the jury had sent several notes which we summarized at pages 644 and 645 of our opinion, the court and counsel discussed this instruction, and that both counsel expressed agreement with it before it was sent to the jury.

With the jury out of the courtroom, the court said that the jury was "entitled . . . to reach a verdict on the lesser charge of manslaughter if they [cannot], after making all reasonable efforts, [reach] a unanimous verdict on the greater charge. I agree. Anybody disagree with that?" Appellant's counsel replied, "No," and the prosecutor said he was "satisfied." Counsel for co-defendant Bradley said that "it really doesn't concern me because they don't have that option" (*i.e.*, to return a manslaughter verdict as to Bradley), and the court responded, "That's true." Bradley's counsel then suggested a small correction (changing "to to so" to "to do so");

the court agreed, made the correction, and then said it would "just send this back to them." We read this exchange as indicating that the handwritten instruction (to which "this" evidently refers), signed by the judge, was sent to the jury in the jury room after it was approved both by appellant's counsel and by government counsel, but that it was not given orally in open court. We therefore acknowledge that, insofar as we said that the record contained "no written instruction" on reasonable efforts, we were mistaken. Nevertheless, we are not persuaded that our mistake requires us now to rescind or otherwise alter our affirmance of the judgment of conviction.

During their deliberations, which lasted for several days,[2] some of the jurors sent a series of notes to the court which were the focus of the appeal. At least one of the notes indicated that the jury was having difficulty deciding between the lesser included offenses of second-degree murder and manslaughter.[3] It was in response to this note that the trial judge "announced his intention to tell the jurors that they could return a verdict on the lesser charge of manslaughter if, after reasonable efforts, they could not achieve a unanimous verdict on second-degree murder." 759 A.2d at 645; *see Jones v. United States,* 544 A.2d 1250, 1252–1254 (D.C.1988) (discussing the "reasonable efforts" instruction). This was the point at which the judge apparently sent the written instruction, quoted above, to the jury with the

---

1.  Appellant has not sought rehearing en banc.

2.  The case went to the jury on Friday, October 3, but the jury did not return its verdict until Friday, October 10.

3.  The indictment charged appellant with first-degree murder while armed, but the jury was instructed on two lesser included offenses,

second-degree murder while armed and voluntary manslaughter while armed. The verdict form shows that the jury found appellant not guilty of first-degree murder but guilty of second-degree murder while armed. It therefore did not return a verdict on the lesser included offense of voluntary manslaughter while armed.

consent of both the prosecutor and appellant's counsel.

The next morning a note came from Juror No. 2, who said that a "small group" of jurors "don't want to send these two (2) AFRO–AMERICAN to jail" and that these jurors were "unwilling to move from these position[s]." 759 A.2d at 646. Another note from another juror came at the same time, but because it revealed the numerical split of the jury, the judge's law clerk gave it back to the juror who sent it "and asked that it be resubmitted without any reference to the numerical division." *Id.* That note was never seen by the judge. Two more notes then came in quick succession. The first said simply, "We are still deadlocked. Please help." The second note, however, "rescind[ed] the note saying we are deadlocked." The judge then instructed the jurors that they were required to be "fair and impartial to both sides," and reminded them that they had "an obligation to decide this case based upon the evidence presented *without other extraneous, irrelevant issues coming into play and impacting on how you decide the case*" (emphasis added). After further deliberation, the jury returned a unanimous verdict later that day, finding appellant guilty of second-degree murder while armed and other offenses, but acquitting him of a conspiracy charge.[4]

The only argument that appellant raised on appeal was that the italicized language in the last instruction coerced the jurors into returning guilty verdicts. Appellant emphasized that the jurors had already revealed their numerical split in one of the earlier notes—which the judge had not seen, thanks to his alert law clerk—and we took that fact into account:

> [E]ven though the judge did not actually know how the jury was divided, the jury had no way of knowing whether the judge knew or not. Therefore, since the judge did not tell the jury that he did not read the note, the jury may have "reasonably assume[d] that the judge had read its note[ ] . . . ."

759 A.2d at 647 (citation omitted). We held nevertheless that the instruction which told the jury to decide the case "without other extraneous, irrelevant issues coming into play" did not coerce the jury into returning a guilty verdict.

Critical to our holding was the fact that the trial judge never gave a *Winters* anti-deadlock instruction;[5] indeed, he had rejected a defense request for one earlier in the jury's deliberations. In prior cases such as *Benlamine v. United States,* 692 A.2d 1359, 1363 (D.C.1997), and *Smith v. United States,* 542 A.2d 823, 825 (D.C. 1988), we had cautioned against giving a *Winters* instruction after the jury has revealed its numerical division, noting that in such a situation there was "great potential for coercing a verdict." *Benlamine,* 692 A.2d at 1363. In this case, however, we concluded:

> Because the judge never gave a *Winters* instruction, there was no real risk of coercion here. Had the judge told the jurors that they had to decide the case after they revealed their numerical split, the risk of coercion would have been high, since the dissenting jurors would feel as though they were being singled out. But that did not happen.

759 A.2d at 648. On the contrary, we held, what the judge had done was simply "to remind the jurors to abide by the oath that

---

4. Bradley, the co-defendant, was acquitted of all charges.

5. *See Winters v. United States,* 317 A.2d 530, 534 (D.C.1974) (en banc); CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 2.91, Alternative B (4th ed. 1993).

they had sworn at the beginning of the trial." *Id.* We also took note of the well-established principle, citing several cases, that a judge has an affirmative duty to eliminate any possibility of jury nullification; to ignore such a possibility when it arises, as it did in this case, "would be a dereliction of [the judge's] duty ...." *United States v. Thomas,* 116 F.3d 606, 616 (2d Cir.1997). We concluded:

> Although some of the jurors may have felt singled out by the judge's forceful admonition to consider only the evidence, they were not told to resolve any deadlock, but simply to follow their sworn duty and act according to law. *Telling jurors to do what they have already sworn to do is not coercion.*

*Id.* at 648 (emphasis added).

In his petition for rehearing, appellant contends "that the trial judge's 'forceful' admonition to the jury, after it had revealed its numerical division and under the coercive circumstances surrounding its deliberations, constituted the functional equivalent of a *Winters* instruction." We cannot agree. Calling the challenged language "the functional equivalent" of a *Winters* instruction is comparing an apple to an orange. At the time the judge gave the final instruction telling the jury to decide the case "without other extraneous, irrelevant issues coming into play," the latest information he had was that the jury was no longer deadlocked and that it wished to "rescind" the note saying that it was. Thus the record does not support appellant's assertion that "the minority, believing that the trial judge knew of the jury's numerical division [although in fact he did not,[6]] felt singled out by the judge's

'reasonable efforts' instruction." The judge was entitled to treat the jury's request to "rescind" its earlier note as a statement that the jury was no longer divided. At that point, the judge could reasonably conclude, there was no deadlock and hence no "minority" capable of being "singled out." Appellant's suggestion to the contrary is nothing more than speculation.

Furthermore, appellant misreads our *Jones* opinion when he cites *Jones* for the proposition that a "reasonable efforts" instruction is "coercive" because it provides a means for dissolving a jury deadlock. As we explained more fully in *Jones,* a "reasonable efforts" instruction enables a jury that appears deadlocked between a greater and a lesser offense simply to by-pass the obstruction that is causing the problem and to "consider the lesser offense without having to agree one way or the other on the greater." 544 A.2d at 1253. In other words, the instruction permits the jurors to decide the case and reach a verdict without ever having to resolve the disagreement which resulted in the deadlock. Indeed, we specifically noted in *Jones* that a "reasonable efforts" instruction had been held in two prior District of Columbia cases[7] *not* to be coercive. *Id.* at 1252.

In short, we are not persuaded that the giving of a "reasonable efforts" instruction in this case added an element of coercion that would require reversal of appellant's conviction. We reiterate what we said in our original opinion: that the instruction to decide the case "without other extraneous, irrelevant issues coming into play"

---

**6.** "[E]ven though the judge did not actually know how the jury was divided, the jury had no way of knowing whether the judge knew or not," 759 A.2d at 647, since he never told the jury that he had not in fact read the earlier note revealing the numerical split.

**7.** *Carmichael v. United States,* 363 A.2d 302, 303–304 (D.C.1976); *United States v. Smoot,* 150 U.S.App. D.C. 130, 131–133, 463 F.2d 1221, 1222–1224 (1972).

was not coercive, either in itself or in the context of other instructions, that "there was no real risk of coercion here," 759 A.2d at 648, and that the judge was simply "remind[ing] the jurors to abide by the oath that they had sworn at the beginning of the trial." *Id.* "Telling jurors to do what they have already sworn to do is not coercion." *Id.*

Appellant's petition for rehearing is therefore denied.

*So ordered.*