# United States Court of Appeals
## For the First Circuit

_____

No. 06-2256

UNITED STATES OF AMERICA,

Appellee,

v.

TREVOR CHARLTON,

Defendant, Appellant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

_____

Before

Lipez and Newman\*, Circuit Judges,
and Selya, Senior Circuit Judge.

_____

Judith H. Mizner for appellant.
Robert E. Richardson, Assistant United States Attorney, with
whom Michael J. Sullivan, United States Attorney, was on brief, for
appellee.

_____

August 10, 2007

_____


_____

\*Of the Federal Circuit, sitting by designation.

**NEWMAN**, **Circuit Judge**.  Mr. Trevor Charlton was indicted on the single count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1):

> (g)  It shall be unlawful for any person-
>     (1) who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year . . . to possess in or affecting commerce, any firearm or ammunition . . . .

Trial was held, and the district court declared a mistrial after ruling that the jury was hopelessly deadlocked; the court scheduled a retrial.  United States v. Charlton, No. 1:04-cr-10306-PBS (D. Mass. June 12, 2006).  Mr. Charlton moved to dismiss the indictment on the ground of violation of the double jeopardy clause of the Fifth Amendment.[1]  The district court denied the motion, and this appeal followed.  See Abney v. United States, 431 U.S. 651, 662 (1977) (denial of a motion to dismiss on double jeopardy grounds is a final decision within the meaning of 28 U.S.C. § 1291); United States v. Keene, 287 F.3d 229, 232 (1st Cir. 2002) (the defendant may take an immediate appeal from an interlocutory order in a criminal case when he presents a colorable claim that further proceedings will constitute double jeopardy, such as when the defendant claims that the district court should not have declared the jury hopelessly deadlocked).

---

[1] U.S. Const. amend. V ("[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb, . . .")

On review of the proceedings, we affirm the district court's rulings.

BACKGROUND

The events leading to Mr. Charlton's arrest are generally undisputed, and their substance is not at issue on this appeal. In brief, on the evening of July 25, 2004 the police in Brockton, Massachusetts were investigating an incident and were given a description of the persons involved, including a man who had taken a taxi to 37 Ellsworth Street. At Ellsworth Street the police found five men including Mr. Charlton. A white shirt was on a cement pillar near where Mr. Charlton was standing, and wrapped in the shirt was a loaded firearm. Mr. Charlton told the police that earlier that evening he had stabbed a man who had assaulted him, and that he was concerned about possible "problems."

The sole count of the indictment, and the only question of the trial, was whether Mr. Charlton was in "possession" of the firearm in terms of 18 U.S.C. § 922(g)(1). The proceedings commenced on Monday, March 13, 2006, the trial consumed about seven hours, and the case was submitted to the jury during the morning of Thursday, March 16. At about noon on Thursday the jury requested the police report of Mr. Charlton's statement; the report had been the subject of testimony but had not been introduced in evidence. The jury was told that it could not be provided. The jury continued its deliberations all day on Thursday.

The next morning, Friday, March 17, the jurors submitted three questions: (1) whether they could have a written copy of the jury instructions; (2) whether they could have a dictionary; and (3) whether it is illegal for a person convicted of a crime punishable by more than one year in prison to possess a firearm. The judge consulted with counsel, and then told the jury (1) that a transcript of the jury instructions would be prepared and provided, and meanwhile the jury should continue to deliberate; (2) that a dictionary would not be provided; and (3) that the answer to the third question is "yes" provided that the government proves the elements of the crime beyond a reasonable doubt. At mid-morning the jury submitted another question concerning a government exhibit, and the judge responded that the court could not comment on the evidence. At 11:10 a.m. on Friday the jurors reported that they "have reached an impasse."

The district court proposed giving the jury a charge pursuant to Allen v. United States, 164 U.S. 492, 501 (1896). Mr. Charlton's counsel asked that the Allen charge not be given, and that the jury simply be instructed to continue to deliberate. The district court followed the procedure requested by Charlton's counsel.

At 4:39 p.m. on Friday the jury again stated that it "remain[ed] deadlocked on the same issue." The jury had deliberated for a total of thirteen hours. Government counsel

again asked that the Allen charge be given, and defense counsel again opposed it, arguing that it was too late in the day on a Friday. The district court decided to proceed with the Allen charge, and read to the jury the Modified Allen Charge of the First Circuit Pattern Jury Instructions[2], as follows:

> I am going to instruct you to go back and resume your deliberations. I will explain why and give you further instructions. In trials, absolute certainty can neither be expected or attained.
>
> You should consider that you are selected in the same manner and from the same source as any future jury would be selected. There is no reason to suppose that this case would ever be submitted to twelve men and women more intelligent, more impartial, or more competent to decide it than you, or that more or clearer evidence would be produced in the future. Thus, it is your duty to decide the case if you can conscientiously do so without violence to your individual judgment.
>
> The verdict which a juror agrees must of course be his or her verdict, the result of his or her own convictions, and not a mere acquiescence in the conclusions of his or her fellow jurors. Yet, in order to bring twelve minds to a unanimous result, you must examine the question submitted to you with an open mind and with proper regard for and deference to the opinion of the other jurors.
>
> In conferring together, you ought to pay proper respect to each other's opinions, and you ought to listen with a mind open to being convinced by each other's arguments. Thus, where there is disagreement, jurors favoring acquittal should consider whether a doubt in their own mind is a reasonable one when it makes no impression upon the minds of the other equally honest and intelligent jurors, who have heard the same evidence with

---

[2] These Instructions are advisory rather than mandatory, and have not been officially adopted by the court. See United States v. Gomez, 255 F.3d 31, 39 n.7 (1st Cir. 2001).

the same degree of attention and with the same desire to arrive at the truth under the sanction of the same oath.

On the other hand, jurors favoring conviction ought seriously to ask themselves whether they should not distrust the weight or sufficiency of evidence which fails to dispel reasonable doubt in the minds of the other jurors. Not only should jurors in the minority reexamine their position, but jurors in the majority should do so also, to see whether they have given careful consideration and sufficient weight to the evidence that has favorably impressed the people in disagreement with them.

Burden of proof is a legal tool for helping you to decide. The law imposes upon the prosecution a high burden of proof. The prosecution has the burden to establish with respect to each count each essential element of the offense and to establish that essential element beyond a reasonable doubt. And if with respect to any element of any count you are left in reasonable doubt, the defendant is entitled to the benefit of such doubt and must be acquitted.

It is your duty to decide the case if you can conscientiously do so without violence to your individual judgment.

The court also told the jury:

I want you to go back and talk seriously about whether or not you can come back Monday with a fresh mind after a long weekend and try to resume deliberations based on this charge.

The jury told the court that it would continue deliberations on Monday.

On Monday morning the jury sent the court two questions at about 10:00 a.m.: (1) whether the jury could consider the defendant's presumed ignorance of the law under which he was being prosecuted, and (2) whether "knowing" could be separated from "possession." After consultation with counsel, the court answered

-6-

both questions in the negative. At 11:32 a.m. the jurors sent a note stating that they are "deadlocked and cannot reach a unanimous verdict."

The government asked the court to declare a mistrial, observing that the jury had declared itself deadlocked three times; defense counsel asked that the jury be told to continue deliberating until the end of the day on Monday. The district court declared a mistrial over defense counsel's objections, and polled the jurors to confirm the deadlock. Mr. Charlton's motion to dismiss the indictment was denied by the court in a written opinion explaining the court's conclusion that the jury was hopelessly deadlocked.

## DISCUSSION

Mr. Charlton points out that "[t]he right not to be put twice to the bar is of a very high order," United States v. Hotz, 620 F.2d 5, 6 (1st Cir. 1980), and argues that the district court abused its discretion by declaring a mistrial when "manifest necessity" had not been shown. He points out that the jury continued to ask questions and review the evidence after the first two declarations of deadlock, and argues that in view of Charlton's objection the jury should have been permitted and required to continue to deliberate at least until the end of the day on Monday. He states that this "premature" declaration of a mistrial shows that the district court failed to explore adequately and exhaust

the alternatives to mistrial, and that the double jeopardy clause bars retrial when a mistrial was improperly declared.

Mr. Charlton stresses his right to have his guilt or innocence decided by the jury at a single trial; he stresses the right not to be subjected to continued trials after a jury has failed to convict. In Arizona v. Washington, 434 U.S. 497, 503 (1978), the Court emphasized the defendant's constitutional right to have his trial completed by the same trier of fact in the same proceeding, while also recognizing that a deadlocked jury can lead to retrial. This court has explained that the Constitution "restrains the government from using its power and resources to subject a defendant to serial prosecutions, thus prolonging his ordeal and unfairly enhancing the prospect of his ultimate conviction." United States v. Toribio-Lugo, 376 F.3d 33, 38 (1st Cir. 2004) (citing Green v. United States, 355 U.S. 184, 187-88 (1957)).

The protection against multiple trials is not, however, absolute. It has long been recognized that a deadlocked jury does not raise a double jeopardy bar. In United States v. Perez, 22 U.S. (9 Wheat.) 579 (1824), Justice Story observed that the manifest necessity flowing from a jury's inability to agree on a verdict permitted the trial judge to retry the defendant, explaining that "the ends of public justice would otherwise be defeated." Id. at 580. See also Richardson v. United States, 468 U.S. 317, 324 (the retrial of a case, after declaration of a

mistrial based on a "hung jury," does not generally present a double jeopardy issue); Arizona v. Washington, 434 U.S. 497, 509 (1978) ("[T]he trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial."); United States v. Barboni, 62 F.3d 5, 7 (1st Cir. 1995) ("It is well settled that an appeal from a denial of a motion to dismiss following a 'hung jury' does not normally present a valid Double Jeopardy claim.").

Although the district court has discretion in deciding whether to declare a mistrial, this discretion is constrained by the constitutional safeguards, such that its exercise "entails heightened rigor and is reviewed accordingly." Keene, 287 F.3d at 233; see United States v. Ramirez, 884 F.2d 1524, 1529 (1st Cir. 1989) (requiring a "high degree" of necessity to be present before concluding that a mistrial is appropriate). As the Court stated in Perez, 22 U.S. at 580, the power to declare a mistrial "ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious cause." On appeal, the exercise of discretion is reviewed to ascertain whether the declaration of deadlock and ensuing mistrial met the criteria of "manifest necessity," United States v. Jorn, 400 U.S. 470, 485 (1971) (plurality op.), with recognition of the deference owed to discretionary rulings of the trial judge who was present throughout the proceedings that led to the deadlock.

This court explained in <u>United States</u> v. <u>Brown</u>, 426 F.3d 32, 36 (1st Cir. 2005), that the declaration of a mistrial is case-specific and cannot be reduced to a "mechanical checklist." However, several interrelated factors form the foundation of the appellate inquiry, including: "(i) whether alternatives to a mistrial were explored and exhausted; (ii) whether counsel had an opportunity to be heard; and (iii) whether the judge's decision was made after sufficient reflection." <u>Toribio-Lugo</u>, 376 F.3d at 39. These factors "serve only as a starting point. Each case is sui generis and must be assessed on its idiosyncratic facts." <u>United States</u> v. <u>McIntosh</u>, 380 F.3d 548, 554 (1st Cir. 2004).

As to the first of these factors, Mr. Charlton argues that the judge should have asked the jury to deliberate for the entire day on Monday. He points to the several attempts by the jury to obtain information, and suggests that there are complexities of fact and credibility that distinguish this case from others in which a mistrial was sustained. He argues that the judge erroneously considered the case to be "a simple one," and that the judge did not give the jury enough time to deliberate. He argues that based on the questions asked by the jurors, they were close to a verdict had the judge been more patient.

The prosecution bears the burden of justifying the declaration of a mistrial. <u>Keene</u>, 287 F.3d at 234. The government stresses that the judge urged the jury several times to attempt to reach a

-10-

verdict, and did not declare a mistrial until the jury had announced itself deadlocked for the third time. The government points out that the jury had deliberated for more than twice the time it took to conduct the trial itself, and that the sole issue was whether Mr. Charlton knowingly "possessed" the firearm. The government states that the nature and timing of the questions asked by the jury suggest that the jury had been in deadlock for a significant period, and that it was apparent that change was extremely unlikely. We conclude that the judge adequately considered the alternative of requiring that deliberations continue, and that the conclusion that the deadlock was hopeless and that further deliberations would be fruitless was a "scrupulous exercise of juridical discretion." United States v. Simonetti, 998 F.2d 39, 41 (1st Cir. 1993).

As to the second factor, it is undisputed that the judge provided defense counsel with the opportunity to be heard, and accepted counsel's objection to giving an Allen charge when the jury declared itself deadlocked after the Thursday deliberations. When the jury again declared itself deadlocked after the Friday deliberations, the judge decided to give the Allen charge, and the jury stated that it would continue deliberating the following Monday. Mr. Charlton argues that the giving of the Allen charge at the end of the day on a Friday was prejudicial.

-11-

The district court in its opinion recognized the "inherently coercive nature of the Allen charge," and remarked that the jury's decision to return on Monday for further deliberations "blunts any possible prejudice."  Slip op. at 10, 11.  Courts have recognized the possibility of pressing a jury into compromise.  See United States v. Julien, 318 F.3d 316, 320 (1st Cir. 2003) ("A jury forced to continue to deliberate after it reported deadlock would compromise too easily, simply to be able to go home."); Barboni, 62 F.3d at 7 n.1 ("By disregarding the jurors on this point [deadlock] and demanding further deliberation, the court might have risked pressuring the jurors into abandoning good faith opinions merely for the sake of reaching unanimity.").  We discern no prejudice to Mr. Charlton; indeed, it is more likely that the Allen exhortation encouraged the jury to continue its deliberations to the following Monday.

As to the third factor, there is no support for Mr. Charlton's charge that the district court declared the mistrial precipitously or without sufficient reflection.  In McIntosh, 380 F.3d at 555, this court sustained the district court's exercise of discretion in not requiring the jury to continue to deliberate after the jurors had sent three notes reporting that they were deadlocked and the judge had delivered a modified Allen charge.  Mr. Charlton's situation is also analogous to that in Barboni, 62 F.3d at 7, where the jury deliberated for almost ten hours after a four-day trial,

sent two notes declaring deadlock, and the district court concluded that further deliberations would be futile. We discern no abuse of the rigorous discretionary standard by not requiring the Charlton jury to deliberate until the end of the day on Monday, in the circumstances of this jury's continuing deadlock. "A hung jury is the paradigmatic example of manifest necessity." McIntosh, 380 F.3d at 553; see also Julien, 318 F.3d at 319 ("A hung jury is the classic instance where a mistrial may be warranted, and that has been so in our jurisprudence for at least 175 years."). The district court's declaration of a mistrial is sustained.

In Richardson, 468 U.S. at 324-26, the Court drew a distinction between circumstances in which the jury's failure to convict, for example for insufficiency of evidence, warrants release of the defendant, and the circumstances in which a trial that does not result in a verdict does not end the original jeopardy. Based on this ground of declaration of a mistrial, the decision to order a new trial does not constitute double jeopardy. No circumstance has been cited as would support departure from this well-established sequel to a hung jury. The district court's order of a new trial is affirmed.

**Affirmed**.