**UNITED STATES of America**

**v.**

**Gregory L. BUTLER, Appellant.**

**No. 24050.**

United States Court of Appeals,
District of Columbia Circuit.

Argued June 4, 1971.

Decided Nov. 17, 1971.

Petition for Rehearing Denied
Jan. 14, 1972.

Mr. Milton A. Kallis, Washington, D. C. (appointed by this court) for appellant.

Mr. John R. Dugan, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before LEVENTHAL, ROBB and WILKEY, Circuit Judges.

LEVENTHAL, Circuit Judge:

This is an appeal from a judgment sentencing appellant to imprisonment for life for first degree felony murder, and to concurrent lesser sentences for armed robbery, and assault with a dangerous weapon. We affirm.

■■ 1. There was ample evidence to justify the verdict of first degree murder, for a murder committed in the course of a robbery.[1] There are some questions concerning the pre-trial photographic identification and lineup. There is ample evidence, however, to support the ruling of the District Court that the in-court identification of appellant by witness Allen Colbert was based on an independent source that was not tainted. Colbert boarded a bus near the robbed store shortly after the time of the robbery. He went to the rear of the bus and sat in the same seat with the man he identified as appellant, paying particular attention to that man because he was "hunched down in the seat as if he didn't want to be seen."

When appellant began a conversation with another person who boarded the bus a few blocks later on, he sat up, saying "he wanted to get out of this part of downtown." Appellant explained to his friend on the bus that he and two other fellows had broken into a store, that no money had been taken, but that he had gotten a black leather coat from the store. Colbert identified the coat which appellant was wearing when he was arrested as similar to the one he saw appellant carrying when he left the bus. Appellant was in Colbert's presence for approximately 30 minutes. Colbert said he focused attention on appellant, who was doing most of the talking. Appellant got off the bus after telling his friend that he planned to visit his aunt's house.

It should be noted that appellant corroborated that he rode in a bus up to his aunt's house wearing this coat that was introduced in evidence.

This opportunity to observe was extraordinary, and is not negated by the fact that Colbert waited ten days before contacting police and was aware that there was a $10,000 reward for helpful information.

Mitigating against any sense of possible injustice is the testimony of appellant's aunt that in his visit he had related his involvement in a robbery and some pertinent details.

■ 2. The judge submitted the case to the jury to render a verdict on

---

1. Appellant argues that robbery is not established if the victim was dead before property was taken. It is the settled law of this jurisdiction that a dead man is a "person" within the robbery statute. Carey v. United States, 111 U.S.App. D.C. 300, 296 F.2d 422 (1961), Frady v. United States, 121 U.S.App.D.C. 78, 100, 348 F.2d 84, 106 (en banc), cert. denied, 382 U.S. 909, 86 S.Ct. 247, 15 L.Ed.2d 160 (1965).

count 1, which charged that defendant killed one Leon Epstein while perpetrating and attempting to perpetrate a robbery [felony murder], and to render a separate verdict on count 2, charging that defendant did kill Epstein with malice aforethought [second degree murder]. Defense counsel objected that the case should go to the jury with the instruction to consider guilt on felony murder, and the further instruction that if, and only if, they acquitted of that crime the jury should consider the issue of guilt on the second degree murder. Defense counsel relied on Fuller v. United States, 132 U.S.App.D.C. 264, 407 F. 2d 1199 (en banc 1968), cert. denied, 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969).

The trial judge, doubtful of the ultimate ruling in *Fuller*, decided to instruct the jury to render verdicts on both counts, advising counsel that in case of guilty verdicts on both counts he would "cross the bridge of having to set one aside for good reason." At the time of sentencing, the District Court did not impose a sentence on the verdict on count 2.

■ We take this occasion to restate and hopefully to clarify the ruling in *Fuller*:

(1) If defendant does not press any objection, the trial judge may instruct the jury to render verdicts on both the first degree felony murder count and the second degree murder count, assuming the judge concludes that the instruction for simultaneous verdicts will not be confusing to the jury.[2]

(2) However, if the defendant insists that the charge of second degree murder for the killing of a person be submitted to the jury solely as a lesser offense included within the indictment charging that the homicide of that person was murder in the first degree, (whether premeditated murder or felony murder), and if he makes timely motion or objection, he is entitled to an instruction in which the judge expressly directs the jury (a) to consider first the issue of guilt as to first degree murder; (b) in the event of an acquittal on first degree murder, to consider the question of guilt of second degree murder as a lesser included offense; (c) in the event of a verdict of guilty of first degree murder to enter no verdict concerning second degree murder.

The course taken by the trial judge in coping with an element in our *Fuller* opinion that left him uncertain as to procedure did not, in our view, result in substantial prejudice to defendant. The judgment brought before us on appeal is

Affirmed.[3]

---

2. It is in this context that the *Fuller* opinion referred to the possible "sense" of instructing the same jury to render verdicts on both counts.

3. Although the District Court entered no judgment on the second degree murder count we conclude that he should, using a procedure similar to that followed in *Fuller* (at note 52), strike count 2, and and vacate the verdict thereon.