**Andre D. POWELL, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 93–CF–1075.

District of Columbia Court of Appeals.

Argued March 7, 1995.
Decided Oct. 31, 1996.

---

Lesley Zork, Public Defender Service, with whom James Klein and Sandra Levick, Public Defender Service, were on the brief, for appellant.

Alan M. Boyd, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Thomas J. Tourish, Jr., and Robert C. Little, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, and STEADMAN, and KING, Associate Judges.

WAGNER, Chief Judge:

Appellant, Andre Powell, was indicted for second-degree murder while armed (D.C.Code §§ 22–2403, –3202 (1996)) and convicted following a jury trial of the lesser-included offense of involuntary manslaughter while armed (D.C.Code §§ 22–2405, –3202 (1996)).[1] He argues for reversal on the ground that the trial court erred by providing the jury with a "reasonable efforts" instruction, over defense objection, after the jury indicated that it was deadlocked on the second-degree murder count. Appellant also contends that the trial court committed reversible error in allowing the government to introduce testimony by the victim's mother that three days before the shooting, she saw her daughter in a van with a man who resembled appellant, had the same first name, and possessed a gun, because there was no reliable evidence connecting the pistol to appellant or to the charges. We affirm.

## I. Factual Background

### A. The Shooting

It is undisputed that the decedent, Valencia Anderson, died from a gunshot wound to her forehead from a gun which appellant fired. The principal contested issue at trial was whether the shooting was accidental. The evidence showed that on May 13, 1992, just before 11:00 p.m., appellant was at the home of a family friend, Ronald Heron, at 1414 18th Place, S.E., Washington, D.C. While in the living room talking with several friends, including Jeannie Brown and Sylvania Graces, appellant was "playing" with what he later described as a black .38-caliber, Smith and Wesson revolver with a brown handle. He was pulling the trigger back and releasing it. At the time,

---

1. Appellant was also convicted of possession of a firearm during a crime of violence (D.C.Code § 22–3204(b) (1996)).

Anderson, another friend, was in a second-floor bedroom where she was stomping and dancing to loud music as she watched television. Appellant went upstairs to tell Anderson to turn the music down because it was interrupting the conversation in the living room. A short time later, appellant shot Ms. Anderson once in the forehead.

Appellant, who appeared to be upset and in a state of shock right after the shooting, told his friends that he had shot Ms. Anderson accidentally. Appellant left the house, walked to the next-door neighbor's porch, and started mumbling to himself that the gun went off accidentally and that maybe he "ought to get out of town or something."

After speaking to some of the witnesses that night, Detective Vivian Washington located appellant about two and one-half blocks from the murder scene and arrested him for the shooting. At the station, appellant waived his *Miranda*[2] rights and made a statement to Detective Washington. In that statement, appellant claimed that he was playing with a gun that he had found "under Pee Wee's [Ronald Heron's] porch," when he heard Ms. Anderson yelling and went to see what the problem was. Appellant said that he continued to play with the trigger of the weapon when he went upstairs, and while on the top step, he slammed the gun against the rail with his right hand, and the gun "went off." Appellant explained that he "must have still had the trigger back." Appellant said that he ran into the bedroom and discovered that he had shot Ms. Anderson. He touched her, and she fell on the bed. He then returned to the hallway, dropped the gun, and ran out of the house.

Dr. Frank Peretti, an expert in the field of forensic pathology, who performed the autopsy on Ms. Anderson, testified that the cause of her death was a "hard or tight" contact gunshot wound to the head. Dr. Peretti explained that a hard contact wound is one that results from a bullet shot from a gun held firmly against the skin. Dr. Peretti based his opinion on a barrel abrasion surrounding the wound and the presence of gun powder stippling (burned and unburned grains of powder) and a large amount of soot inside the wound path. He testified that the soot and gas expelled from the barrel of a gun held two feet or greater from someone would dissipate before reaching the skin. He stated that, as a general rule, stippling would be present only in a wound caused by a weapon fired at a distance of eighteen inches or less.

Dr. John Smialek, the Chief Medical Examiner for the State of Maryland, also an expert in the field of forensic pathology, reviewed Ms. Anderson's autopsy and examined specimens of her tissue, including the skin from the entrance wound in her head. Dr. Smialek concluded that Ms. Anderson died of a contact gunshot wound to the front of her forehead.

Both doctors opined that the trajectory of the bullet that struck Ms. Anderson was from front to back, and downwards with no deviation. Dr. Smialek testified that, assuming Ms. Anderson was seated on a bed sixteen to eighteen inches off the floor, the trajectory of the bullet would be consistent with a person standing above Ms. Anderson firing downward. Dr. Peretti noted that a person shot in the manner that Ms. Anderson was shot would not be able to get up and move after being shot.

Jeannie Brown testified that after appellant went upstairs to tell Ms. Anderson to turn her music down, she heard a gunshot. Brown said that she ran upstairs after the others left the house and remained with Ms. Anderson until the ambulance arrived. Ms. Brown testified that Ms. Anderson was slumped over the bed in a sitting position with her head down on her chest. Ms. Brown also testified that, earlier that evening at about 7:00 p.m., appellant approached her in the living room with a gun, pointed it at her forehead, and pulled the trigger. She heard a click, pushed the gun away, and told appellant to stop playing. According to Brown, appellant told her that the gun was not loaded, but she saw him place one bullet in the cylinder before putting the gun back in his pocket. Brown testified that appellant was upset later because she told his lawyer about placing the gun to her head earlier on

2. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the night of the shooting. She further testified that appellant told her to say at trial that it was a "play gun." Ms. Brown also testified that appellant suggested that she leave town rather than testify. Brown admitted that about ten minutes before the shooting, she had smoked crack cocaine with Anderson.

Michael Mack, a friend of appellant, testified that some eleven hours prior to the shooting, he was with appellant at the home of Dwight Terrell, who lived next door, when appellant picked up the gun from the floor to prevent a one-year-old child from getting it. Mack said he was at Ronald Heron's with appellant and the others in the living room. Mack testified that he went upstairs to investigate the noise and that appellant passed him going up the stairs as he came back down. Mack testified that, from his position at the bottom of the stairs, he could see appellant leaning over the bannister at the top of the stairs when he heard a gunshot.

Avon Shell, appellant's "best friend," also testified that he saw appellant pick up a pistol from the floor of Dwight Terrell's house. He said that appellant kept the gun because they could not awaken Mr. Terrell, and they did not know what else to do with it. Mr. Shell was also at Heron's house at the time of the shooting. He testified that he heard a "quick bumping noise" just before the shot rang out.

Delicia Terrell, who lived next door to Heron, testified that she saw appellant shortly after the shooting and that he was upset and crying and asked that someone call the police. Effie Tolbert, who claimed to be neither a friend of appellant nor Ms. Anderson, testified that she was sitting in the living room when Ms. Anderson was shot. It was Ms. Tolbert's testimony that appellant was leaning on the bannister outside the bedroom talking and laughing with Ms. Anderson just moments before she heard a gunshot. Tolbert testified that appellant never entered the room. However, she was impeached with her grand jury testimony during which she stated that she heard Ms. Anderson tell appellant that he should stop playing with guns, heard the gunshot and saw appellant run out of the bedroom and drop the gun on the stairs.

Contrary to his statement to Detective Washington, appellant testified that he found the gun by the sofa in the living room of Mr. Terrell's home and took it to prevent Mr. Terrell's baby granddaughter from getting it. Appellant testified that he went next door to Heron's house, where he removed the bullets before playing with the weapon. He testified that he left the gun under a sofa in the living room at Heron's house and left at about 1:00 p.m. Later that night, he returned, and while in the living room talking with friends, he heard Ms. Anderson upstairs. Appellant explained that he took the weapon with him when he went upstairs only because he was planning to return it to Mr. Terrell's house immediately thereafter. Appellant explained that he leaned over the bannister before reaching the top of the stairs in such a way that the top of the bannister was under his armpits, and the gun accidentally hit the bannister and discharged as he turned to go back downstairs. Appellant said that his finger was not on the trigger when the gun hit the bannister. He testified that he ran into the bedroom, touched Ms. Anderson on the shoulder and watched her fall back on the bed. He became hysterical, started to cry, ran out of the room and dropped the gun. Appellant described the weapon as a dark-colored, .38–caliber Smith and Wesson revolver. He acknowledged that he had training in the Army in the use of weapons and that he knew that you should never point a gun at someone, whether loaded or unloaded.

In the government's rebuttal case, Dwight Terrell testified that appellant found the .38–caliber revolver in his dresser drawer about a month before the shooting. John Webster, a specialist in the use and operation of Smith and Wesson revolvers, testified that all Smith and Wesson revolvers are designed with safety features which prevent accidental discharge and that, if in proper working condition, simply banging the gun would not cause it to fire.

## II. Denial of Appellant's Motion for Mistrial and the "Reasonable Efforts" Instruction

Appellant argues that the trial court erred in denying his motion for a mis-

trial and thereafter giving the jury a "reasonable efforts" instruction over his objection. Essentially, the "reasonable efforts" instruction "allows the jury to consider the lesser-included offense, if unable to reach a verdict on the greater offense, after making all reasonable efforts to do so." *Wright v. United States,* 588 A.2d 260, 262 (D.C.1991). Appellant contends that it is a defendant's prerogative to make the tactical choice of an "acquittal first" instruction, which if not honored throughout the trial, renders that choice meaningless.[3] The government contends that appellant did not request an "acquittal first" instruction after the jury announced that it was unable to reach a verdict on the greater offense, and therefore, appellant should not be permitted to challenge the court's use of the "reasonable efforts" instruction as an alternative to mistrial. In any event, the government argues, the trial court properly exercised its discretion in denying the motion for mistrial and in providing the "reasonable efforts" instruction to the jury when it considered the alternative "acquittal first" instruction to be too coercive under the circumstances. Before examining the parties' respective arguments further, we outline briefly the context in which the issue arose in the trial court.

### A. *Jury Instructions and Deliberations*

The jury commenced deliberations on May 25, 1993 at 4:00 p.m., but they were excused for the day at 4:40 p.m. The jury resumed deliberations on May 26, 1993 at 9:45 a.m., delivering a note at 10:30 a.m. seeking the definition of "conscious disregard." The trial court responded to the note, and the jury deliberated for the remainder of the day without reaching a verdict. The jury resumed deliberations on June 1, 1993 at 9:30 a.m., after a hiatus because of a juror's illness. At 2:50 p.m. that day, the jury sent another note seeking further clarification of the "conscious disregard standard."[4] After consultation with counsel, the court again reinstructed the jury in an effort to respond to the question. The trial court also suggested that a "best effort" instruction might be in order if the jury continued to have problems with the second-degree murder count. Defense counsel objected, and the court did not give the instruction at that time. The jury continued its deliberations that afternoon without returning a verdict.

On June 2, the trial court received a note from the jury stating: "At this point, further deliberations are futile and amount to the majority attempting to coerce the minority...." It was then that the trial court determined that a "reasonable efforts" instruction should be given instead of another "acquittal first" instruction because it concluded that the latter would be too coercive. Defense counsel opposed the instruction, arguing that it was up to the defendant to decide whether the "reasonable efforts" instruction should be given and whether the jury should consider the lesser-included offense when unable to reach a verdict on the greater offense. Observing that it would be error to give the "acquittal first" instruction under the circumstances and rejecting appellant's position that the court had no alternative except to declare a mistrial, the trial court denied appellant's motion for a mistrial, and gave a "reasonable efforts" instruction.[5]

---

**3.** The "acquittal first" instruction allows the jury to consider the lesser-included offense only if they find that the government has failed to prove beyond a reasonable doubt a defendant's guilt of the greater offense. *Wright, supra,* 588 A.2d at 261; CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.00 (3d ed.1978).

**4.** This time the note read:

Could we receive further clarification of the conscious disregard standard? What are the specific elements of conscious disregard? Is the background thought or the awareness of risk required for conscious disregard something more than background *knowledge* or training? What is the definition of depraved?

**5.** The trial court first explained to the jury that, although it might be wrong, it thought that the jury was deadlocked on the second-degree murder count. The court then instructed the jury in pertinent part as follows:

I told you in my instructions, and it's reiterated on the verdict form that you are to consider the second count of involuntary manslaughter while armed with a pistol only if the defendant has been found not guilty unanimously of Count I. And I presume that since you're deadlocked, that you're not unanimous for guilty and you're not unanimous either for not guilty on the depraved heart second[-]degree murder while armed. And for that reason, I'm going to tell you to go on to Count II of involuntary

The jury resumed deliberations and returned a verdict of guilty as to involuntary manslaughter while armed and the two firearm charges without reaching a verdict on the second-degree murder count.

### B. *Legal Analysis*

■ Appellant argues that the trial court erred in denying his motion for a mistrial after the jury deadlocked and by giving the "reasonable efforts" instruction over his objection. He contends that this procedure was inconsistent with our case precedents which hold that the decision on whether to provide the jury with an "acquittal first" or a "reasonable efforts" instruction rests solely with the defendant.

This court has held that, at least with respect to its initial charge to the jury,

> where timely requested, the trial court should give an instruction which allows the jury to consider the lesser[-]included offense if unable to reach a verdict on the greater offense, after making all reasonable efforts to do so.

*Wright, supra,* 588 A.2d at 262; *see also (Robert) Jones v. United States,* 620 A.2d 249, 252 (D.C.1993). Although recognizing that neither the "reasonable efforts" approach nor the "acquittal first" instruction is wrong as a matter of law, we concluded that the trial court should use the form of the

> manslaughter while armed with a pistol in the following way:
>
> If after making all reasonable efforts you are or have been unable to reach a verdict on the greater charge of second[-]degree murder while armed, then you may go on to consider the lesser[-]included offense described in Count II of involuntary manslaughter while armed with a pistol. By requiring you to make all reasonable efforts to arrive at a unanimous verdict on second[-]degree murder while armed with a pistol, I do not mean only a superficial or brief attempt to reach a verdict on that charge. I mean a serious and thorough attempt with discussion among all of the jurors and exhausting all reasonable efforts to reach a verdict on the greater offense in Count I of second-degree murder while armed. Only after such efforts and discussions have been completed may you go on to consider the lesser offense in Count II of involuntary manslaughter while armed with a pistol.
>
> If I'm correct that you're at that point and have exhausted all reasonable efforts to arrive at a unanimous verdict on second[-] degree murder while armed, then you should go on to

instruction selected timely by the defendant "because the defendant's liberty is at stake." *Wright,* 588 A.2d at 262 (citing *United States v. Tsanas,* 572 F.2d 340, 346 (2d. Cir.), *cert. denied,* 435 U.S. 995, 98 S.Ct. 1647, 56 L.Ed.2d 84 (1978)).[6] The government contends that appellant failed to make that choice either prior to or during deliberations.

Prior to jury deliberations, appellant proposed an instruction which would have explained to the jury the following:

> When evaluating the charges you should consider first whether the defendant is guilty of second[-]degree murder. If you find the defendant guilty of second[-]degree murder, you should not go on to consider involuntary manslaughter.

As the government points out in its brief, this language is more akin to the "acquittal first" approach than a "reasonable efforts" formulation. However, the proposed instruction did not state that the jury could consider the lesser-included offense only after reaching a verdict on the greater one, or what circumstances had to exist before they could consider the lesser-included offense. In that sense, the proposed instruction is not an "acquittal first" instruction as it has been defined. *See, e.g., Cosby v. United States,* 614 A.2d 1291, 1294 (D.C.1992); *Wright, supra,* 588 A.2d at 261.[7]

consider the second count, involuntary manslaughter while armed now.

6. In *Tsanas,* the court pointed out that the two instructions offered advantages and disadvantages for each side in the trial. 572 F.2d at 346. Among them were: (1) that an "acquittal first" instruction might prevent the jury's consideration of the lesser charge and a conviction which might be forthcoming otherwise; and (2) dissenters might give in rather than cause a mistrial. *Id.* The pros and cons of the "reasonable efforts" instruction mirror those of the "acquittal first" instruction. *See Wright, supra,* 588 A.2d at 262 (citing *Tsanas,* 572 F.2d at 346). Considerations like those which underpin the rule of lenity, where any doubts are resolved in favor of more lenient punishment, are supportive of the rule leaving the choice to the defendant. *Id.* (citations omitted).

7. *See also* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.00 (3d ed.1978). The instruction in the revised edition sets forth the "acquittal first" language along with the alterna-

Appellant suggests that his failure to object to the "acquittal first," instruction and the jury verdict form which reinforced it, demonstrate his preference for the instruction. The trial court included in the instructions, without defense objection, language which confined the jury to the "acquittal first" approach.[8] *See United States v. Roland,* 748 F.2d 1321, 1325 (2d Cir.1984). Thus, appellant was in the same posture that he would have been in if he had requested the instruction explicitly. Moreover, if satisfied with the instruction, there was no need for appellant to object to it.[9] These considerations support appellant's claim that the circumstances reflect that he was making a tactical choice for the "acquittal first" instruction.

In any event, whether appellant made such a choice initially does not control the outcome of this case. The critical circumstances affecting our disposition of the issue concerns what occurred at the time of the challenged reinstruction. We have recounted in some detail in Part II A. the events preceding the jury's final note announcing that further deliberations would be futile. The defense took the position that a mistrial must be granted. The trial court denied the motion for mistrial. Having considered all that had occurred, the trial court decided to give a "reasonable efforts" instruction over appellant's objection, because of the view that an "acquittal first" reinstruction would be too coercive. Appellant did not ask for an "acquittal first" reinstruction or offer any alternative other than

a mistrial. Appellant simply argued that giving a "reasonable efforts" charge over his objection was impermissible regardless of the circumstances. The government contends that the trial court properly exercised its discretion in providing the jury with a "reasonable efforts" instruction and avoiding a mistrial.

The trial court's concern about requiring the jury to continue deliberating under an "acquittal first" instruction reflected this court's decision in *(Nathan) Jones v. United States,* 544 A.2d 1250 (D.C.1988). In *(Nathan) Jones,* this court held that it was reversible error to give an "acquittal first" instruction, over the defendant's objection, to a jury which had reported that it was deadlocked because it was "impermissibly coercive." 544 A.2d at 1254. The court reasoned that the "acquittal first" instruction encourages conviction and "gives a bargaining edge to jurors favoring conviction of the greater offense." *Id.* at 1253. In *(Nathan) Jones,* the jury had reported a deadlock on the greater offense and requested permission to consider the lesser-included offense, a course with which the defendant agreed. 544 A.2d at 1251. This court held that the trial court should have given the "reasonable efforts" instruction, as the defense counsel requested, and its failure to do so was reversible error. *Id.* at 1254.

However, appellant contends that the trial court's "reasonable efforts" instruction to the deadlocked jury was inconsistent with this court's decision in *(Robert) Jones v. United*

---

tive "reasonable efforts" formulation in brackets. See CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.00 (4th ed.1993). See also note 2, *supra.*

8. Prior to closing arguments, the trial court provided the jury with the following version of an "acquittal first" instruction:

> The second offense with which the defendant is charged in the indictment is involuntary manslaughter while armed. However, if you have found the defendant guilty of second[-]degree murder while armed, you should omit and not even consider this particular count of the indictment.
>
> However, if you have found unanimously that the defendant [is] not guilty of second[-] degree murder while armed, then, and only then, should you consider this second charge of involuntary manslaughter while armed.

The verdict form also instructed the jury to consider the offense of involuntary manslaughter only if they found appellant not guilty of the second-degree murder count. In explaining the verdict form, the trial court reiterated the "acquittal first" language.

9. A party's failure to object to an instruction before the jury begins deliberations as required by Super. Ct.Crim. R. 30 results in severe consequences on appeal if that party might have been entitled to a different instruction. That rule provides in pertinent part:

> No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection.

*States,* 620 A.2d 249 (D.C.1993). He contends that *(Robert) Jones* requires that the question of whether the jury should be instructed on "acquittal first" or "reasonable efforts" in a deadlock situation must be left solely to the defendant. In that case, while recognizing that whether an "acquittal first" instruction or a "reasonable efforts" instruction should be given is a tactical decision which must be left to the defendant, this court held that it was not plain error for the trial court to give the "acquittal first" instruction to a deadlocked jury. *Id.* at 252. Considering the relative strength of the government's evidence, the tactical discretion involved in the decision, and the potential risk of shrewd counsel deliberately "sowing error" into the record by failing to object, this court found no miscarriage of justice warranting reversal. *Id.* at 252 & n. 2.

In the case now before the court, appellant did not seek reinstruction on its claimed choice, "acquittal first." However, he did object to the court's determination to give the "reasonable efforts" instruction. The question is whether it was erroneous to give that instruction over a defendant's objection after the jury announced that it was deadlocked, apparently on the greater offense.

 While "a defendant is entitled to a jury in disagreement," "[i]t is in the public interest ... that a jury reach a verdict if it can reasonably do so." [10] *Epperson v. United States,* 495 A.2d 1170, 1174 (D.C.1985). The trial court may not coerce a verdict, but it "should give a temperate prod to a 'hung jury' so as to bring out a verdict." *Id.*

We start with the premise that the "reasonable efforts" instruction is not wrong as a matter of law. *(Robert) Jones, supra,* 620 A.2d at 252. In addition, we have aptly described the "reasonable efforts" instruction as the "less stringent" instruction when compared with the "acquittal first" formulation. *Parker v. United States,* 601 A.2d 45, 47

---

**10.** This important consideration competes in this case with the rationale underlying the recognition of an appellant's preference when deciding between the "acquittal first" and "reasonable efforts" formulation.

**11.** *See Winters v. United States,* 317 A.2d 530 (D.C.1974) (en banc); Criminal Jury Instructions

---

(D.C.1991). In *(Nathan) Jones, supra,* we outlined certain advantages to the defendant when the instruction is used which are pertinent here:

> When the "reasonable efforts" instruction is given, however, the jury may consider the lesser offense without having to agree one way or the other on the greater. The jurors favoring the lesser will not vote for the greater, but those who favor the greater will still vote for conviction when the jury moves on to consider the lesser; hence the deadlock is dissolved, and there is no mistrial.

*(Nathan) Jones,* 544 A.2d at 1253. While conceivably there might be circumstances when the "reasonable efforts" instruction might be impermissibly coercive, the instruction is not so simply because of its terms. We do not believe that such circumstances were present in this case.

 In this case, the jury reported a deadlock under circumstances indicating that its impasse involved only the greater offense. Appellant does not contend otherwise. The jury's notes to the court requested clarification of matters concerning subject of the greater offense. The court had instructed the jury initially to consider the lesser-included offense only if it found the defendant not guilty of the greater offense. The instruction was repeated on the verdict form. The jury is presumed to follow the court's instructions. *Clark v. United States,* 593 A.2d 186, 193 (D.C.1991). The trial court here was faced with a jury that had reported itself deadlocked in its deliberations on the greater offense under an "acquittal first" instruction. The trial court was not necessarily bound by the jury's own determination whether a true deadlock existed. However, it expressed its concern that the "acquittal first" reinstruction would be too coercive and that a *Winters* instruction might be inappropriate.[11] Appellant did not propose or en-

---

for the District of Columbia, No. 2.901(B) (4th ed.1993). We express no views whatever with respect to the permissibility of these or any other approaches that the trial court might take, since no course of action was proposed or consented to by appellant other than a mistrial.

dorse either of these steps nor did he propose any other alternative suggestions, such as requiring further deliberation. He simply rested on his motion for a mistrial. The trial court considered appropriately that the resolution of the mistrial question should not turn solely on appellant's decision to object to the less rigorous "reasonable efforts" instruction, which appellant was entitled to seek even if he had requested an "acquittal first" instruction earlier. *See Cosby v. United States,* 614 A.2d 1291, 1296 n. 6 (D.C.1992). Here, the instruction allowed the jury to consider the lesser offense, which it apparently had not considered except to the extent that elements of the lesser offense were included in the greater.

■ Some deference must be accorded the trial court in exercising its discretion to deny the motion for mistrial. *See Carter v. United States,* 497 A.2d 438, 441 (D.C.1985). In exercising its discretion, among the trial court's options, in appropriate circumstances, is the course which the trial court took here. In *(Nathan) Jones, supra,* 544 A.2d at 1252, we took note of two prior cases in the District of Columbia that held that "when a jury is deadlocked on the greater offense, the trial court does not coerce a verdict of guilty on the lesser offense by permitting the jury at that point to consider the lesser offense," which impliedly permits an instruction that allows a jury deadlocked on the greater offense to consider the lesser offense without having to acquit on the greater. *Id.* (citing *Carmichael v. United States,* 363 A.2d 302, 303–04 (D.C.1976) and *United States v. Smoot,* 150 U.S.App. D.C. 130, 131–33, 463 F.2d 1221, 1222–24 (1972)). In *Carmichael,* we noted that defense counsel did not object to the reinstruction, but we do not read the case as having turned primarily on that fact.[12] In *Smoot,* cited as authority in *Carmichael,* defense counsel had requested a mistrial after the jury reported itself deadlocked, but the trial court gave a form of a

"reasonable efforts" instruction which was affirmed on appeal. In *Smoot,* the court stated that one of the factors the court may consider when faced with the alternative of discharging the jury or directing that they continue deliberations is the possibility that they might be able to agree on some of the charges submitted. 463 F.2d at 1223. Recognizing that it might be necessary to inquire of the jury with care and circumspection, the court stated that the following inquiry would be appropriate:

> Without attempting to influence your deliberations in anyway, I merely wish to inquire whether you have explored the possibility of agreement on the lesser charge.

*Id.,* 463 F.2d at 1223–24. The court noted that it would be proper to reinstruct the jury of its duty to determine the guilt or innocence of the accused as to any offense necessarily included in the crime charged. *Id.* 463 F.2d at 1224. Thus, the "acquittal first" approach, which the defendant may choose initially, bears within its own terms the possibility of a "reasonable efforts" reinstruction in the event of deadlock. We conclude that the trial court's instruction was not impermissible on the particular facts of this case, and we find no abuse of discretion in its decision denying the motion for mistrial. *See Edelen v. United States,* 627 A.2d 968, 972 (D.C.1993) ("The decision whether to declare a mistrial is confided to the trial judge's sound discretion."); *see also Carey v. United States,* 647 A.2d 56, 61 (D.C.1994).

### III.

■ Finally, appellant argues for reversal on the ground that the trial court erred in permitting the government to introduce evidence that three days before the shooting, decedent's mother, Carolyn Mitchell, observed a man, whom her deceased daughter introduced to her as Andre, with a pistol in

---

12. In *Carmichael,* the trial court gave a partial verdict instruction on the theory that if the jury could not agree on the greater offense, they might return a verdict on the lesser-included offense. 363 A.2d at 303. This occurred after the report of a deadlock and a *Winters* instruction. The next morning the jury requested instruction on the lesser-included offense and

partial verdict. The court reinstructed on the former, but not the latter. Citing *Smoot, supra,* this court rejected appellant's claim that it was coercive to instruct the jury on the lesser-included offense. We noted that it was the jury which had requested instruction on the lesser offense and that the defense did not object. *Id.* at 304.

his possession. Based upon the government's proffer prior to trial, the trial court ruled that the evidence was admissible under *Toliver v. United States*, 468 A.2d 958 (D.C. 1983), and therefore required no analysis under *Drew v. United States*, 118 U.S.App. D.C. 11, 331 F.2d 85 (1964). Appellant contends that it was error to allow the testimony after it became apparent that Ms. Mitchell was not able to link appellant to the weapon or the weapon she had observed to the crime charged. *See King v. United States*, 618 A.2d 727, 728 (D.C.1993) (to be admissible, weapon must be linked to the defendant and the crime charged).

At trial, Ms. Mitchell testified that three days before the shooting, her daughter, the victim in this case, introduced her to a man named Andre who offered her a ride in his van. At that time, according to Ms. Mitchell, she observed the man move a gun from the floor in the middle of the van and place it under his seat as she entered the vehicle. In addition to describing the gun as dark in color, Ms. Mitchell selected from a photograph of weapons, a picture of a "short gun" which she believed resembled most closely the gun that she saw. The gun that she circled was later identified by an expert in firearms classification as a .38–caliber Smith and Wesson special revolver. This was the type of weapon that appellant said he fired that night, and the bullet recovered from Ms. Anderson's body was consistent with a bullet shot from a .38–caliber Smith and Wesson revolver. This evidence, taken together, provided an adequate link to connect appellant to the weapon and the crime charged in this case. *See Ali v. United States*, 581 A.2d 368, 375–76 (D.C.1990), *cert. denied*, 502 U.S. 893, 112 S.Ct. 259, 116 L.Ed.2d 213 (1991). The

fact that the witness could not positively identify appellant as the Andre to whom her daughter introduced her just three days before the crime and that she could say only that he resembled the man "goes to the weight and not the admissibility of the evidence." *Burleson v. United States*, 306 A.2d 659, 661 (D.C.1973). Such evidence is relevant and admissible to show that appellant had the means to commit the offenses for which he was on trial. *See Martin v. United States*, 606 A.2d 120, 132 (D.C.1991) ("An accused person's prior possession of the physical means of committing the crime is some evidence of the probability of his guilt, and is therefore admissible."). It was not other crimes or bad acts evidence which would be subject to a *Drew* analysis, but evidence of the crime charged. *Ali*, 581 A.2d at 376.

■■■■ Appellant contends that the testimony should have been excluded because its prejudicial effect outweighed its probative value. He contends that the evidence had the potential for prejudice because, presented through decedent's mother, it engendered sympathy. "Whether evidence should be excluded as more prejudicial than probative is a decision committed to the sound discretion of the trial court." *Hawkins v. United States*, 482 A.2d 1230, 1232 (D.C.1984); *accord, Blakeney v. United States*, 653 A.2d 365, 369 (D.C.1995). We cannot say that the trial court abused its discretion in making its ruling. Even assuming any error in the admission of the evidence, we conclude that it was harmless.[13] *See Gibson v. United States*, 649 A.2d 593, 595 (D.C.1994).

For the foregoing reasons, the judgment of convictions appealed from hereby is

---

**13.** Appellant admitted that he fired a shot from the .38–caliber Smith and Wesson pistol which killed the decedent. The dispute centered on whether he did so accidentally, and the decedent's mother could not elucidate the central issue of what occurred on the night of the shooting. The evidence against appellant was strong. In order to prove that he committed the offense of involuntary manslaughter, the government had to prove beyond a reasonable doubt that his conduct created " 'extreme danger to life or serious bodily injury' and amount[ed] to 'a gross

deviation from a reasonable standard of care.' " *Comber v. United States*, 584 A.2d 26, 48 (D.C. 1990). There was substantial evidence that appellant was playing with the weapon just prior to firing the fatal shot. He was observed placing a bullet into the gun. Appellant admitted that he was experienced with weapons and knew that you should never point a gun at anyone. Although appellant claimed to have been some distance from his victim when he fired the shot, scientific evidence refuted his claim.

*Affirmed.*[14]

KING, Associate Judge, concurring:

In *Wright v. United States,* 588 A.2d 260 (D.C.1991), we renounced a long-standing principle of law relating to the instruction to be given when a jury is called upon to decide a case involving both the charged offense and a lesser included offense.[1] When Wright was tried, the standard instruction,[2] known as the "acquittal first" instruction, informed the jury that it should consider the lesser offense only if it found that the government had failed to prove beyond a reasonable doubt each and every element of the greater offense, *i.e.,* only if the jury acquitted the defendant of the greater offense. At his trial, however, Wright requested the so-called "reasonable efforts" instruction which would inform the jury that it could consider the lesser offense if it was unable to reach a verdict on the greater offense and if it had made reasonable efforts to reach a verdict on the greater offense. The trial court denied Wright's request and gave the acquittal first instruction. Wright was convicted of the greater offense and he appealed.

In holding that the trial court erred in refusing to give the reasonable efforts instruction, the *Wright* court acknowledged that the acquittal first instruction was the standard instruction "used in this jurisdiction for many years." *Id.* at 261. It also acknowledged that the instruction conformed "to the procedure approved by this court and the District of Columbia Circuit when greater and lesser included offenses are charged." *Id.*[3] Finally the *Wright* court observed that the acquittal first instruction was not "wrong as a matter of law." *Id.* at 262 (citing *United States v. Tsanas,* 572 F.2d 340, 346, (2d Cir.), *cert. denied,* 435 U.S. 995, 98 S.Ct. 1647, 56

---

**14.** The question of whether this court properly decided *Wright, supra,* which is raised by our colleague in the concurring opinion, is not before the court on this appeal. It has not been briefed or argued by the parties; therefore, we have no occasion to address it.

However, speaking only for myself as the author of *Wright,* I am constrained to point out that my concurring colleague is mistaken in concluding that the decision in *Fuller v. United States,* 407 F.2d 1199, 1221 (D.C.Cir.1968) (en banc) precluded this court from holding in *Wright* that "where timely requested, the trial court should give an instruction which allows the jury to consider the lesser[-]included offense, if unable to reach a verdict on the greater offense, after making all reasonable efforts to do so." *Wright, supra,* 588 A.2d at 262. In *Fuller,* the appellant argued that the trial court erred in failing to instruct the jury that the first degree felony-murder count was an *alternative* count to a second count charging second-degree murder as to one victim. 407 F.2d at 1221. Thus, the sole issue, as framed by the court, was "whether 'the trial court committed reversible error in failing to instruct the jury that it could not convict both on Count I, charging first degree felony-murder, and on Count II, charging second[-]degree murder (as reduced by the trial court from a charge of premeditated murder).' " *Id.* at 1222. The *Fuller* court determined that such multiple convictions are permissible under the statutes and that it was not plain error for the court not to instruct the jury that the second-degree count should be considered as a lesser-included offense. 407 F.2d at 1226, 1230. The *Fuller* court's holdings required no consideration of the propriety of a timely requested "reasonable efforts" instruction approved in *Wright.* The discussion in *Fuller* concerning the use of the "acquittal first" instruction in submitting lesser-included offenses to the jury was *dicta* by which this court was not bound in *Wright. See Murphy v. McCloud,* 650 A.2d 202, 205 (D.C. 1994); *see also Ford v. United States,* 533 A.2d 617, 624–25 (D.C.1987) (en banc).

**1.** Although, for the reasons stated, I believe that *Wright* was wrongly decided, my opinion on that score does not make it so. Therefore, given *Wright* as precedent, I join the opinion of the court.

**2.** CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.00 (3d ed.1978). In pertinent part it provided:

If you find that the government has proven each and every element of [the greater] offense beyond a reasonable doubt, then it is your duty to find the defendant guilty of the greater offense ..., and you should not go on to consider the lesser included offense.... However, if you should find that the government has not proven each and every element of the greater offense ..., then you must find the defendant not guilty of [the greater offense] and you should go on to separately consider whether the defendant is guilty of the lesser included offense....

**3.** Citing *Towles v. United States,* 521 A.2d 651, 654 n. 6 (D.C.1987) (en banc); *Franey v. United States,* 382 A.2d 1019, 1021 n. 2 (D.C.1978); *United States v. Butler,* 147 U.S.App. D.C. 270, 272, 455 F.2d 1338, 1340 (1972); *Fuller v. United States,* 132 U.S.App. D.C. 264, 292, 407 F.2d 1199, 1227 (1968) (en banc); *cert. denied,* 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969).

L.Ed.2d 84 (1978)). Nonetheless, the court held that, if the defense requests the reasonable efforts instruction as part of the original jury charge, the court must give that instruction rather than the acquittal first instruction. In my view this court went astray in ruling as it did on this issue.

The *Wright* court principally relied upon two cases, one decided by this court three years earlier and a federal court of appeals case that had been decided thirteen years earlier. *See (Nathan) Jones v. United States,* 544 A.2d 1250 (D.C.1988); *Tsanas, supra,* 572 F.2d at 340. In *Jones* the trial court gave the acquittal first instruction in its initial charge and again, over defense objection, after the jury announced it was deadlocked on the greater charge. On appeal from a conviction of the greater offense, this court held that the trial court erred in giving the acquittal first instruction over defense objection after the jury had deadlocked. Although it left open the question concerning the instruction to be given in the initial charge to the jury, this court, for the first time, questioned the propriety of the acquittal first instruction. In the course of its discussion of this point, the court cited the cases cited three years later by the *Wright* court, specifically, *Butler, Towles,* and *Fuller,* but concluded that while those cases held that a guilty verdict on the greater offense precluded consideration of the lesser offense, those cases did not "require an acquittal of the greater offense before a lesser offense may be considered." *Jones, supra,* 544 A.2d at 1252.

The *Wright* court also relied on the *Tsanas* case which discussed at considerable length the advantages and disadvantages, for both the government and the defense, of both the acquittal first and the reasonable efforts instructions. That same discussion is repeated, in large part, in *Wright* and will not be recounted here. The *Tsanas* court concluded that "we cannot say that either form of instruction is wrong as a matter of law," *id.* at 346, a proposition endorsed in *Wright,* 588 A.2d at 262. The *Tsanas* court then held

that the trial court should give the instruction elected by the defense, a course that has been described by another state court as the "optional approach." *Tsanas, supra,* 572 F.2d at 346; *see State v. Sawyer,* 227 Conn. 566, 630 A.2d 1064, 1069 (1993). The only explanation given for adopting the optional approach was the assertion that the defense should be permitted to decide which instruction should be given because it is the defendant's "liberty that is at stake." *Tsanas, supra,* 572 F.2d at 346. Relying on *Tsanas,* we gave essentially the same reason in *Wright* for holding that the defense should have the right to determine which of the two instructions to give. *Wright, supra,* 588 A.2d at 262.

I respectfully disagree with the court's decision in *Wright* for two reasons. First, my review of our precedents on this issue persuades me that the acquittal first principle was the governing law in this jurisdiction when *Wright* was decided, that the principle unmistakably had been laid down in *Fuller,* and no division of this court was authorized to hold otherwise in light of *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971). Second, assuming we were writing on a clean slate and were free to choose between acquittal first and the optional approach, I submit, given our long and unremarked history with the former, in contrast to the controversy and uncertainty that has been prompted by our adoption of the latter,[4] that acquittal first is the preferable course. I also find convincing the Supreme Court of Connecticut's recent rejection of the optional approach. That court observed:

> The jury instruction to be given at the conclusion of a trial ... is a question of law that cannot be resolved by deference to the wish of the defendant or by a sporting theory of justice. See *State v. Ferreira,* 8 Haw.App. 1, 791 P.2d 407, 409, *cert. denied,* 71 Haw. 668, 833 P.2d 901 (1990); *State v. Labanowski,* 117 Wash.2d 405, 422, 816 P.2d 26 (1991). A criminal trial is not a game of chance. Allowing the defendant to choose the transitional instruction

---

4. *See, e.g., Jackson v. United States,* 683 A.2d 1379 (D.C. 1996); *(Robert) Jones v. United States,* 620 A.2d 249 (D.C.1993); *Cosby v. United States,*

614 A.2d 1291 (D.C.1992); *Parker v. United States,* 601 A.2d 45 (D.C.1991).

and to gamble on its consequences slights the desirable goals of thorough deliberations and finality and neglects the state's interest in the resolution of the charges on which it presented the defendant. See *People v. Boettcher,* 69 N.Y.2d 174, 181–84, 513 N.Y.S.2d 83, 505 N.E.2d 594 (1987). Such an approach to transitional instructions is dictated more by expediency than by a commitment that justice be done to both the state and the defendant, and that the charges brought be thoroughly deliberated, considered and disposed of definitively. See Uniform Rules of Criminal Procedure 535(b), comments, 10 U.L.A. 281–82 (1974) (unanimity requirement leads to more thorough consideration of issues and more careful deliberation).

*Sawyer, supra,* 630 A.2d at 1071. It is for these reasons that I would not abandon an instructional practice, *i.e.,* the giving of the acquittal first instruction, that had been in place, without any controversy or any claim of unfairness for some years, even if we were free to do so.

Reasonable people, of course, can differ, as demonstrated by the different results reached in *Tsanas* and *Sawyer,* on which approach is preferable. I will not address that question further, however, because there is a far more fundamental ground for concluding that the *Wright* court erred when it adopted the *Tsanas* optional approach, *viz,* because there was binding contrary precedent, the *Wright* court was without authority to make such a ruling.

I think it clear, for the reasons stated below, that the United States Court of Appeals in *Fuller v. United States, supra,* authoritatively ruled in 1968 that the acquittal first instruction was the governing principle of law where lesser included offenses were involved. The same point was made, although not forcefully and with no analysis, by the government in *Wright.* In its brief for that case, the government cited generally to *Fuller,* but relied on language from one of our own cases, arguing that "in its initial charge to the jury, 'the proper course is for the trial judge to instruct the jury first to consider the greater offense and then consider the lesser offense, *only* if reasonable doubt exists concerning the accused's guilt of the greater offense.' *Towles v. United States,* 496 A.2d 560, 565 (D.C.1985) (emphasis in original), *aff'd,* 521 A.2d 651 (1987) (en banc), *cert. denied,* 483 U.S. 1008, 107 S.Ct. 3236, 97 L.Ed.2d 741 (1987)." [5] Wright contended in his reply brief that the quoted passage from *Towles* was dictum and, therefore, not binding on the court,[6] an argument not without force if there is no reference back to *Fuller.* The *Wright* court, without formally saying whether the quoted language from *Towles* was, or was not binding, concluded that the cases cited by the government did not require the giving of the acquittal first instruction in the initial charge where the defense objects. *Wright, supra,* at 261.

In *Wright,* the court was not urged by the government to closely examine *Fuller,* and the court gave no indication that it did so. The *Wright* court, however, relied heavily upon the opinion in *Tsanas,* which directly addressed the implications of *Fuller.* The *Tsanas* court concluded that some of the language in *Fuller* was ambiguous, and that even if the language could be construed as requiring acquittal first, it was doubtful that such an assertion was a "holding" of the court. I submit the *Tsanas* court was wrong on both counts.

In *Fuller,* the defendant, charged with rape and murder, was indicted in Count I for first degree felony-murder, in Count II of first degree premeditated murder, and in Count III of rape. During the course of the trial, the trial judge reduced the first degree premeditated murder charge to second degree murder. Without objection by the defense, the jury was instructed to consider first degree felony-murder (Count I), second

---

5. Government's brief at 7.

6. Reply brief at 2–3. Wright also pointed out, correctly, that the quotation in the government's brief set out above is from the *Towles* panel opinion which we vacated in the order setting the case for rehearing en banc. *Towles v. United States,* 497 A.2d 793 (D.C.1985) The *en banc* opinion, however, uses similar language which also, standing alone, could fairly be characterized as dictum.

degree murder, or manslaughter as a lesser included offense of second degree murder (Count II), and rape (Count III). The jury convicted on both Counts I and III, but only convicted in Count II of manslaughter. On appeal, after the case had been considered by a division of the court, the case was set for *en banc* consideration on the sole question: "whether 'the trial court committed reversible error in failing to instruct the jury that it could not convict both on Count I, charging first degree felony-murder, and on Court II, charging second degree murder (as reduced by the trial court from a charge of premeditated murder).'" *Fuller, supra,* 132 U.S.App. D.C. at 287, 407 F.2d at 1222.

The *en banc* court held that if the defense wants the jury to consider second degree murder as a lesser included offense of felony-murder rather than as a separate charge, it must request that the jury be instructed to that effect. Thus, the defense should request that the separate murder charge be struck and the jury informed that it should consider second degree murder only as a lesser included offense of felony-murder. Because no such instructional request was made, and because the court found no prejudice, it concluded there was no plain error.[7] *Id.* 132 U.S.App. D.C. at 295, 407 F.2d at 1230.

In reaching that conclusion, the court discussed, extensively, the interrelation between greater and lesser offenses and the jury's role when called upon when considering those offenses. It began that discussion with the language the *Tsanas* court found to be ambiguous:

> When a greater and lesser offense are charged to the jury, the proper course is to tell the jury to consider first the greater offense, and to move on to consideration of the lesser offense *only if they have some reasonable doubt as to guilt* of the greater offense.

*Id.,* 407 F.2d at 1227 (emphasis added). What is the meaning of the italicized language? The *Tsanas* court says it can be

"taken to be satisfied by a difference of opinion among the jurors." *Tsanas, supra,* 572 F.2d at 344 n. 4. In other words, according to the *Tsanas* court, "hav[ing] some reasonable doubt" does not necessarily mean that the jury must have acquitted on that charge. Instead, the language can be construed to mean that the jury is simply unable to reach a verdict, *i.e.,* it has "some reasonable doubt." Thus, so the argument goes, the *Fuller* court could have been saying that the jury may consider the lesser offense when it is unable to agree on the greater offense—essentially a reasonable efforts instruction. A careful examination of *Fuller* demonstrates, however, that the disputed passage ("have some reasonable doubt as to guilt") is nothing more than shorthand for "having acquitted" of the greater offense.

I began my analysis by noting that in two separate passages later in the same opinion, the *Fuller* court explicitly stated that the jury should consider the lesser offense only if it acquitted of the greater. *Fuller, supra,* 132 U.S.App. D.C. at 295, 407 F.2d at 1230 (jury "does not even consider the issue of second degree murder unless it acquits as to first degree"); *id.* 132 U.S.App. D.C. at 297, 407 F.2d at 1232 ("only [after an acquittal of the greater offense] may [the jury] turn to consideration ... of the lesser offense"). These two passages, and their context, are discussed in detail *infra* at 389–390. Second, the *Fuller* court provided evidence of its understanding of the meaning of the disputed passage in a footnote at the end of the sentence which includes that passage. *Id.* 132 U.S.App. D.C. at 293 n. 27, 407 F.2d at 1227 n. 27. That footnote contains three separate references which, in my view, unmistakably point to the conclusion that the passage cited sounds in acquittal first tones, and nothing else. First, footnote 27 refers to *United States v. White,* 225 F.Supp. 514 (D.D.C. 1963) which uses a similar shorthand—"not unanimously convinced" as opposed to the "have a reasonable doubt" formulation found in *Fuller.* In the end, however, the judge in *White* explained the meaning of that term,

---

7. The court acknowledged that Fuller was entitled, on remand, to vacation of the second degree murder conviction. *Id.* 132 U.S.App. D.C. at 298 n. 52, 407 F.2d at 1233 n. 52. In that regard, *see*

*Byrd v. United States,* 510 A.2d 1035 (D.C.1986) which adopted *Byrd v. United States,* 500 A.2d 1376 (D.C.1985).

*i.e.,* "not unanimously convinced" means acquittal first:

> The jurors were told that *if they were not unanimously convinced that the Government had proved beyond a reasonable doubt* that the defendant was guilty of first degree murder, then they should pass on to a consideration of the lesser included offense of second degree murder; and that *if they were not unanimously convinced that the Government had proven beyond a reasonable doubt* that the defendant was guilty of second degree murder, then they should pass on to a consideration of the second lesser included offense of manslaughter; and that *if they were not unanimously convinced that the Government had proven beyond a reasonable doubt* that the defendant was guilty of manslaughter, *then their verdict must be not guilty.* This instruction meets all of the requirements of McAffee, supra [105 F.2d 21 (App. D.C. 1939)], and is far more clear than the instruction requested by defendant. Defendant therefore cannot rightly complain of the Court's refusal to give the requested instruction.

*Id.* at 519 (underlining and italics added). The language underlined is essentially indistinguishable from that appearing in the *Fuller* passage. The italicized material at the end, however, explains the meaning of the underlined language, telling the jury that it must find the defendant not guilty when it is "not unanimously convinced" of the defendant's guilt. In short, where the court says to the jury that if you are "not unanimously convinced that the Government has proved [the greater offense] beyond a reasonable doubt," the court is telling the jury that you must acquit of the greater offense before you move on to consider the lesser offense.

The second reference in *Fuller*'s footnote 27 is to the standard jury instruction then in use in the federal courts. The cited instruction can only be characterized as an acquittal first instruction. It provides in pertinent part:

**8.** One of the holdings of *Austin,* unrelated to the issue presented here, was later overruled by the *en banc* court. *See United States v. Foster,* 251

## § 15.10 Verdict—Lesser Included Offense

The law permits the jury to find the accused guilty of any lesser offense which is necessarily included in the crime charged in the indictment, whenever such a course is consistent with the facts found by the jury from the evidence in the case, and with the law as given in the instructions of the Court.

*So, if the jury should unanimously find the accused "Not Guilty" of the crime charged in the indictment, then the jury must proceed to determine the guilt or innocence of the accused as to any lesser offense* which is necessarily included in the crime charged.

\* \* \* \* \* \*

W. Mathes & E. Devitt, Federal Jury Practice and Instructions, § 15.10 at 159 (1965) (emphasis added).

Finally, in footnote 27 the court also refers to one of its previous decisions in a murder case where the jury had convicted of first degree premeditated murder, but the appellate court, holding that the evidence of premeditation and deliberation were lacking, directed the entry of a verdict for second degree murder. *See Austin v. United States,* 127 U.S.App. D.C. 180, 382 F.2d 129 (1967).[8] The *Fuller* court observed that "in light of the principle" set forth in the passage under examination here, "a verdict of murder in the second degree negatives a finding of premeditation and deliberation...." *Fuller, supra,* 132 U.S.App. D.C. at 292 n. 27, 407 F.2d at 1227 n. 27 (citing *Austin, supra,* 127 U.S.App. D.C. at 193 n. 27, 382 F.2d at 142 n. 27). This quotation, although perhaps not as clear-cut as the reference to the *White* case and jury instruction § 15.10, nonetheless describes the law relating to lesser included offenses that was understood to apply at the time, *i.e.,* the question of consideration of the lesser offense does not arise until there has been a finding of not guilty on the greater offense. *See Green v. United States,* 355 U.S. 184, 190–91, 78 S.Ct. 221, 225–26, 2 L.Ed.2d 199 (1957) (where jury

U.S.App. D.C. 267, 270, 783 F.2d 1082, 1085 (1986) (en banc).

instructed on both first and second degree murder, and verdict is guilty of second, but silent as to first, court assumed implied acquittal of first degree murder).

For all of these reasons, I am persuaded that the *Fuller* court was saying that a jury should not consider a lesser offense unless and until it has acquitted of the greater offense. The question then becomes whether that statement of law, which the *Fuller* court described in footnote 27 as a "principle," was a holding of the court, or is otherwise binding on us. If it is authoritative, then the *Wright* court could not lay down a different rule, because it was bound "to follow a decision of the United States Court of Appeals rendered prior to February 1, 1971" as the *Fuller* case was. *M.A.P., supra,* 285 A.2d at 312.

We have recently discussed the circumstances under which a prior case should be regarded as controlling on a point of law expressed in an earlier decision. In *District of Columbia v. Sierra Club,* 670 A.2d 354 (D.C.1996), we considered the question whether the legal analysis[9] applied in an earlier case before us, *see Kelly v. Parents United,* 641 A.2d 159, *modified on other grounds,* 648 A.2d 675 (D.C.1994), had been adopted as the governing principle to be applied in future cases. Concluding that it did not, we held that "[a]t most, the question whether the mode of analysis ... applies to suits alleging unlawful government conduct 'lurked in the record' in *Parents United.* The parties and the court assumed that [the analysis] applied. Nobody challenged that assumption, and the 'judicial mind' did not apply itself to the issue or pass upon it." *Sierra Club,* 670 A.2d at 360. In reaching that conclusion, we applied some general

principles that had been distilled from some of our precedents:

> As we recently had occasion to reiterate in *Murphy v. McCloud,* 650 A.2d 202 (D.C. 1994), "[t]he rule of stare decisis is never properly invoked unless in the decision put forward as precedent the judicial mind has been applied to and passed upon the precise question." *Id.* at 205 (quoting *Fletcher v. Scott,* [201 Minn. 609] 277 N.W. 270, 272 (Minn.1938) (citations omitted)). "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Id.* (quoting *Webster v. Fall,* 266 U.S. 507, 511, 45 S.Ct. 148, 149, 69 L.Ed. 411 (1925)); *see also Thompson v. United States,* 546 A.2d 414, 423 n. 14 (D.C.1988) (quoting *Webster).* "A point of law merely assumed in an opinion, not discussed, is not authoritative." *Murphy, supra,* 650 A.2d at 205 (quoting *In re Stegall,* 865 F.2d 140, 142 (7th Cir.1989)).

*Sierra Club, supra,* 670 A.2d at 360; *see also Umana v. Swidler & Berlin,* 669 A.2d 717, 720 (D.C.1995). When examined under these guidelines, it is plain that the *Fuller* court's statement of principle that, in lesser included offense analysis, consideration of the lesser offense does not take place until there has been an acquittal of the greater offense, must be, by stare decisis, binding upon us.

The underlying issue in *Fuller,* where there had been a killing during the course of the commission of a rape, was whether the jury could properly return murder verdicts based on two separate theories: (1) as a felony-murder, and (2) as a second degree murder, *i.e.,* with malice aforethought, as a lesser included offense of premeditated and deliberated first degree murder.[10] In *Naples*

---

9. The legal analysis in question was that defined by *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), relating to whether a regulatory statute also created a private right of action.

10. First degree felony-murder and premeditated and deliberated murder are defined in D.C.Code § 22–2401. Second degree murder is defined in D.C.Code § 22–2403. They provide:

> Whoever, being of sound memory and discretion, kills another purposely, either of deliberate and premeditated malice or by means of poison, or in perpetrating or attempting to perpetrate any offense punishable by imprison-ment in the penitentiary, or without purpose so to do kills another in perpetrating or in attempting to perpetrate any arson, as defined in § 22–401 or § 22–402, first degree sexual abuse, mayhem, robbery, or kidnapping, or in perpetrating or attempting to perpetrate any housebreaking while armed with or using a dangerous weapon, or in perpetrating or attempting to perpetrate a felony involving a controlled substance, is guilty of murder in the first degree.

D.C.Code § 22–2401 (1996 Repl.).

*v. United States,* 120 U.S.App. D.C. 123, 344 F.2d 508 (1964) (*Naples II*), a division of the court had held "that it was prejudicial error to refuse to instruct that the jury could not find the defendant guilty of both first and second degree murder." *Fuller, supra,* 132 U.S.App. D.C. at 286–87, 407 F.2d at 1221–22. Fuller also had been convicted of both first and second degree murder, and although he had not requested that the jury be instructed that guilty verdicts of both degrees of murder could not be returned, he claimed that the trial court committed plain error in failing to give such an instruction. *Id.* In rejecting that claim, the *Fuller* court made a series of rulings. First, it overruled that aspect of *Naples II* that held that the jury could not return verdicts for both counts of murder, ruling "that the statutory definition of the crimes of first and second degree murder does not impel a requirement that they be charged in the alternative." [11] *Id.* 132 U.S.App. D.C. at 291, 407 F.2d at 1226.

The *Fuller* court also held, in the portion of the opinion where the court described the relationship between the greater and lesser offenses, that there was no plain error on the part of the trial judge in not giving any special instruction relating to the possible verdict the jury could reach. Finally, the court held that the defense could choose either to have the jury return separate verdicts for the two murder counts as was done in that case, or the defense could have the jury instructed that it should consider second degree only as a lesser included offense of first degree felony-murder.

Fundamental to each of the latter two holdings is the acceptance by the court of the principle of acquittal first as settled law. In short, the court considered acquittal first to be the governing legal principle upon which its ultimate holdings were based. The court demonstrated its reliance upon that principle in at least two passages. First, where the

court found no plain error, it did so in reliance upon the acquittal first principle:

> If the defendant exercises his right to request that second degree murder be presented only as a lesser included offense, then as with *Naples II,* the jury will only render one verdict. That the defendant has a right on request to this sort of ordered presentation is, however, far different from *Naples II.* The jury is not to be told the crimes are alternatives. It is not to be told to acquit of second degree murder if it convicts of first degree. *On the contrary, it does not even consider the issue of second degree murder unless it acquits as to first degree.*
>
> In this case the trial judge charged the jury with respect to both felony-murder and second degree murder. He did not instruct the jury to consider the question of second degree murder only if they determined that the Government had not met its burden as to some element of the first degree murder count. No request, motion or objection was made by appellant. In our view appellant cannot obtain reversal on the ground that there was "plain error affecting substantial rights."
>
> Our reasons for holding that there is no basis for reversal is that, in many instances, it makes sense to permit a verdict of second degree murder to be entered by a jury that also enters a verdict of felony-murder. It makes sense in terms of the strong policies favoring prosecutorial joinder of all possible theories of the crime in one trial in the absence of prejudice and the principle of sound judicial administration that retrials are to be avoided wherever possible.

*Fuller, supra,* 132 U.S.App. D.C. at 295, 407 F.2d at 1230 (footnotes omitted) (emphasis added).

Second, in requiring the defendant to elect between either an instruction that the jury consider both degrees of murder separately

---

Whoever with malice aforethought, except as provided in §§ 22–2401, 22–2402, kills another, is guilty of murder in the second degree. D.C.Code § 22–2403 (1996 Repl.).

**11.** As the court made clear, there can be no double punishment in such circumstances:

"Again we emphasize the obvious, that the fact that defendant may be found guilty of both crimes does not mean that he is subject to cumulative punishment." *Id.* 132 U.S.App. D.C. at 292, 407 F.2d at 1227.

or as a lesser included offense, the *Fuller* court plainly relied upon the acquittal first principle as the defining statement of the law governing its analysis:

> Our conclusion that the defendant is required to make the motion that second degree murder be presented only as a lesser included offense rests on our view that the lack of such restriction does not tend to confuse the jury, and our inability to find any reasonable basis for concluding that, either in the case at bar or others that come to our mind, the jury has been or may be confused as to its duties in determining what showing is requisite to establish a case for first degree murder.

> Appellant's argument, if we understand it correctly, is ultimately cast in terms of jury room mystique: namely, that when all is said and done, one can never tell what would have gone on in the jury room had the charge been given.

> We reject defendant's approach. We might reach a different result *if we started from the premise that the jury has an unrestricted function in determining whether its verdict should reflect a conclusion of guilt as to the lesser or greater offense. But the law defines the jury's duty otherwise.* It must first consider the highest crime charged by the government in its indictment, and consider whether the defendant is guilty on that charge. If it is satisfied beyond a reasonable doubt that defendant is guilty of that greater offense, it is the jury's duty to bring in a verdict that says so. *Only if the jury has a reasonable doubt as to guilt of the higher offense, may a jury performing its duty acquit of that charge, and only then may it turn to consideration of whether defendant is guilty of the lesser offense.*

*Id.* 132 U.S.App. D.C. at 296–97, 407 F.2d at 1231–32 (emphasis added).

These passages demonstrate that the *Fuller* court considered the principle of acquittal first to be the governing rule of law, and that it was bound to apply it in its analysis of the issues before it. That legal principle was not one that merely lurked in the record of the *Fuller* case; instead it was the focal point of the judicial decision-making process. In short, it is fair to say that the judicial mind in *Fuller* focused upon that principle and relied upon it in its analysis. *See Sierra Club, supra,* 670 A.2d at 360. Therefore, in my view, it was binding upon the *Wright* court.[12]

---

12. ·However, as I said in note 1 *supra,* my opinion on this point changes nothing, and I am bound by *Wright* so long as the *en banc* court has not reversed that decision. Of course, trial judges are also bound by *Wright.*